No. 36,083

In re Estate of Sarah C. Pennington, Deceased (HENRY D. PEN-NINGTON and MARTHA J. CARSON, *Appellants,* v. ROY H. WASSON and MYREL W. GREEN, as Executors, etc., L. S. ROBERTS, Administrator, *Appellees* and *Cross-appellants*).

(148 P. 2d 516)

Opinion filed May 6, 1944.

*W. E. Broadie,* of Winfield, argued the cause, and *C. H. Quier,* of Winfield, was on the briefs for the appellants.

*Roy H. Wasson,* of Wichita, and *Harry O. Janicke,* of Winfield, argued the cause, and *H. W. Herrick,* of Winfield, and *J. B. McKay,* of El Dorado, were on the briefs for the appellees.

*L. S. Roberts,* of Winfield, argued the cause *pro se.*

The opinion of the court was delivered by

DAWSON, C. J.: This is another chapter of litigation with which the probate and district courts of Cowley county and this court have been concerned for several years past. (*Penningyon v. Green,* 152 Kan. 739, 107 P. 2d 760; *In re Estate of Pennington,* 154 Kan. 531, 119 P. 2d 488; *Kininmonth v. Carson,* 156 Kan. 808, 137 P. 2d 173.)

This appeal is concerned with the propriety of a judgment of the district court approving and sustaining the probate court's decree of final settlement and distribution of the estate of the late Sarah C. Pennington of Cowley county.

Sarah had died on March 4, 1938. On the assumption that she had died intestate, A. S. Kininmonth was appointed and qualified as administrator on March 15, 1938, and he set about his duties in that capacity. Some time later Sarah's will was discovered and offered for probate and probated October 6, 1939, and Kininmonth was appointed and qualified as administrator c. t. a. Kininmonth died later, following which L. S. Roberts was appointed administrator c. t. a., d. b. n.

Sarah's will which had been executed on January 1, 1910, made some five-dollar bequests to her brothers and sisters, including these appellants, also to a widowed sister-in-law and her children. The bulk of her considerable estate was devised to her sister Amanda C. Pennington. At the same time Amanda C. Pennington made a similar will devising the bulk of her estate to her sister Sarah.

Amanda died on April 23, 1939. A will she had executed on March 19, 1937, and which she republished with an added codicil on April 16, 1938, was filed for probate on April 26, 1939, and was admitted to probate at some later date not shown. That order became a finality because the parties adversely concerned did not appeal within time. (*In re Estate of* [Amanda] *Pennington,* supra.) By the terms of the will of 1937, Amanda specifically revoked "any and all former wills or codicils." In her testamentary instrument of 1938, she declared that she ratified and confirmed her will of March 19, 1937, subject only to the terms of the codicil.

No appeal was taken from the order of the probate court of October 6, 1939, admitting Sarah's will to probate. The administration

of her estate was proceeded with by the successive administrators until July 20, 1943, at which time Roberts, the present administrator, pursuant to due notice to all concerned, presented his petition for final settlement and accounting in conformity with section 223 of the probate code, G. S. 1943 Supp. 59-2247.

At that hearing Henry D. Pennington and Martha J. Carson, appellants herein, filed a request that the assets of Sarah's estate be assigned and distributed to Sarah's heirs at law, and not according to her will, for the reason that the will was not offered for probate within one year after Sarah's death on March 4, 1938, and because no proceedings to probate her will were commenced until September 13, 1939, and the will was not admitted to probate until October 6, 1939. But those objections were clearly untenable since they were not effectively raised against the probate of the will and by a timely appeal from the order admitting the will to probate.

Pennington and Carson further alleged that the estate of Amanda Pennington was not entitled to participate in the distribution of Sarah's estate because Amanda had possession of Sarah's will and had withheld it from probate for more than one year after Sarah's death, and that neither the estate of Amanda nor the devisees and legatees of Amanda's will and codicil of 1937 and 1938 were entitled to any part of the estate of Sarah, for the reason that the wills of both Sarah and Amanda, executed on January 1, 1910, were "mutual and reciprocal," and that Amanda's later will and codicil of 1937 and 1938 were violative of the "mutual, reciprocal, and contractual" wills of the two sisters executed in 1910.

The probate court rejected this belated claim of Pennington and Carson, approved the final account of the administrator, and made an order of final distribution in accordance with the terms of the will. Amanda, the principal beneficiary being dead, the bulk of Sarah's estate, in cash, personal property and real estate was set over to Wasson and Green, executors of Amanda's estate. The probate court also allowed a fee of $2,000 for attorney's services in behalf of the appellees and $38.10 for his expenses and directed that payment thereof be made by the administrator.

Pennington and Carson appealed to the district court from the final decree of accounting and distribution of Sarah's estate. No formal pleadings were filed, but the district court heard evidence in support of appellants' objection to the probate court's decree. It was shown or admitted that in the last few years of Sarah's life,

she was distracted; that on October 29, 1936, she was adjudged incompetent, and a guardian of her person and estate was appointed; and that Sarah died under that disability. It was also admitted that the same attorney drew the wills of the two sisters in 1910 and that both wills were executed the same day.

It was also stipulated that Pennington and Carson were the only surviving brother and sister of Sarah and Amanda, deceased, and were their next of kin.

Pertinent files of the probate court pertaining to the estates of the two sisters were admitted in evidence.

Some other matters of evidence were introduced, and some tenders of evidence were excluded. If material in this appeal they will be noticed later.

The trial court held that the decree of final settlement and distribution of Sarah's estate which the probate court rendered on July 20, 1943, should be approved and sustained, and judgment was entered accordingly. The trial court also ordered and adjudged that an attorney's fee of $500 should be allowed to counsel for the appellants Henry D. Pennington and Martha J. Carson, which fee, together with the costs of the action, should be taxed to the estate of Sarah C. Pennington.

The usual post-trial motions were filed and disposed of. Pennington and Carson appeal, and the administrator cross-appeals from the trial court's allowance of the $500 fee to appellants' counsel.

The first specification of error urged is based on the district court's ruling which sustained the decree of the probate court directing that the bulk of Sarah's estate should be set over and distributed to Wasson and Green, executors of Amanda Pennington's estate. At this point the administrator, Roberts, raises the question whether Pennington and Carson could be heard to object to the final accounting and distribution of Sarah's estate on the ground that Amanda by her will of 1937 and its codicil of 1938 breached an implied contract with her sister when they made their wills in favor of each other in 1910.

We give our attention to the point contended for by appellants— that by the making of the will of 1937 and its codicil of 1938, Amanda breached a contract with her sister, which had the effect of rendering nugatory the will of Sarah, with the consequence that Sarah died intestate, and Pennington and Carson, her surviv-

ing brother and sister, being the next of kin were entitled to her estate. While the former statutory term, "contest of a will" no longer appears in the new probate code, yet it is beyond cavil that the claim asserted by Pennington and Carson was one which should have been timely asserted against the estate of Sarah during the course of its administration. (*In re Estate of Grindrod*, 158 Kan. 345, 148 P. 2d 278, syl. ¶¶ 5, 6.) If, however, we ignore that formidable barrier to the present consideration of the point which appellants press so insistently on our attention, and treat it on the merits, the weight of authority is to the effect that when two people make wills in favor of each other, and no provision is made for an alternative devise or bequest of the estate to a third party if the named beneficiary dies before the maker of the will, the will of the testator who dies first terminates whatever mutual, reciprocal or other relationship existed between them, and the survivor is free to make a different disposition of his property by will or otherwise. (136 A. S. R. 593; 28 R. C. L. 166-167; 69 C. J. 1297.)

Counsel for appellants characterize the wills of the two sisters, Sarah and Amanda, executed in 1910, as "mutual and reciprocal," and as "mutual, reciprocal and contractual." Without attempting niceties of distinction, we think the wills of 1910 were "mutual" as that term was defined in *Carle v. Miles*, 89 Kan. 540, 132 Pac. 146, where it was held:

"The separate wills of two persons which are reciprocal in their provisions giving the property of each to the other are mutual wills." (Syl. ¶ 1.)

In the case just cited, a brother and sister had made testamentary disposition of their properties in favor of each other. Such disposition in each will was made in consideration of a reciprocal provision in the other. In the body of the opinion, the late Mr. Justice Benson, speaking for this court, quoted approvingly from an early New York case (*Day, Ex Parte*, 1 Bradf. 476) thus:

"'A mutual will, strictly called a reciprocal will, is one by which each testator makes a testamentary disposition in favor of the other. That such a will is valid and entitled to probate is beyond question.' (Note, 2. A. & E. Ann. Cas. 26.)" (p. 542.)

In 1 Underhill on the Law of Wills, section 13, it is said:

"Mutual wills, whether joint or several, are revocable by either testator during the lifetime of the others so far as his disposition of property is concerned, without notice to or consent of the others, unless the making of the will is the result of a contract by which each has agreed to devise his property to the others."

Footnotes are cited in support of the text, including the notable and closely analogous case of *In re Cowley's Estate*, 136 Pa. St. 628, 20 Atl. 567.

Counsel for appellants contend that the wills of the sisters executed in 1910 were contractual. We do not so construe them. While each will says "in consideration of my sister . . . having made a will giving, bequeathing and devising the greater portion of her property to me and because of her devotion to me, I do make this will as above set forth," etc., yet the essential recitals of a contract are wanting; and in the absence of evidence on the question courts generally do not regard such testamentary instruments in themselves as complementary parts of a binding contract. In *Wilson v. Starbuck*, 116 W. Va. 554, 182 S. E. 539, 102 A. L. R. 485, where it was held that when one party to a contract to make mutual wills has fully performed the undertaking and has died, the contract is enforceable in equity against the estate of the survivor. In the body of the opinion it was said:

"It must be pointed out, however, that this conclusion is not reached by holding in this case that where the wills are mutual with reciprocal provisions but not joint, that the wills themselves, without proof of the circumstances under which they were drawn and executed, are sufficient evidence to establish the contract. There are no declarations nor recitals in these wills that would be sufficient for that purpose. The general rule is, undoubtedly, in the case of mutual, but not joint wills, that the making of the wills themselves, although evidential of the contractual relationship, is insufficient to establish that relationship. The wills before us, with nothing more than their due execution shown, undoubtedly would fall within that rule." (p. 558.)

See, also, Anno.—Joint and Mutual Wills, 102 A. L. R. 494-495.

. In the cases where wills have been held to be contractual, it will be found that either the wills expressly recited that they were contractual, or the fact that they were contractual was established by evidence. (*Frontier Lodge v. Wilson*, 139 Kan. 75, 30 P. 2d 307.) Here there was no evidence, and the court is asked to construe the wills of Sarah and Amanda as contractual by inference or implication. That we cannot do. (*Menke v. Duwe et al.*, 117 Kan. 207, 230 Pac. 1065; Anno.-Joint and Mutual Wills, 43 A. L. R. 1027-1028.) In *Clements v. Jones*, 166 Ga. 738, 144 S. E. 319, the rule is thus stated:

"The general rule is, that if two persons execute wills at the same time, either by one or two instruments, making reciprocal dispositions in favor of

each other, the mere execution of such wills does not impose such a legal obligation as will prevent revocation. (a) Agreements to make wills are not established merely because two persons simultaneously make reciprocal testamentary dispositions in favor of each other, when the language of such wills contains nothing to the effect that the instruments are the result of a contract." (Syl. ¶ 2.)

Moreover, if by the making of the will of 1937 Amanda had breached a contract with her sister Sarah in 1910, what would be the consequence? It would seem that the will of 1937 would merely be ineffectual to disturb her contractual will of 1910. When Sarah died both wills of 1910 would still be intact; and the administrator of Sarah's estate could maintain an action against Amanda (or when she died against her executors) for specific performance or for damages. There is good authority for that view. (*Wright v. Wright,* 215 Ky. 394, 285 S. W. 188; *Brown v. Webster,* 90 Neb. 591, 134 N. W. 185, 37 L. R. A., n. s., 1196.) We note that in Georgia there is a statute which provides that the revocation by one party to a mutual will operates to revoke the other party's will. (*Clements v. Jones,* supra.) In want of such a statute no such result could be declared.

After the death of Sarah, Amanda was free to make another will, and she did so on April 16, 1938, by republication of her will of 1937 with an added codicil. That will was probated against the objections of the present appellants, and their belated appeal to review the judgment of the district court upholding its probate was dismissed by this court. (*In re Estate of Pennington,* supra.)

We have gone into the merits of appellants' main contention, not to accede to their view that their claim could properly be withheld or not pressed to an adjudication until the estate was ready to be closed on the administrator's motion for a decree of final accounting and distribution, but because of a misconstruction of some language in *Pennington v. Green,* supra, page 742, which may have misled them. Certainly this court had no intention to hold that appellants could wait until the "last day in the morning" before closing Sarah's estate to present the formidable claim they have here attempted to maintain.

Appellants complain of the $2,000 allowed as an attorney's fee to counsel for the administrator and for the executors of Amanda's estate which is the principal beneficiary of Sarah's estate. To this complaint there are two short but effective answers—first, we have no means of determining whether the fee was moderate, adequate or

excessive. Two courts have sanctioned it, and it is not suggested how we can lay hold of it; and second, since we are concluding that Pennington and Carson, appellants herein, have no justiciable interest in the distribution of Sarah's estate they have no concern with the fee allowed to counsel for the appellees.

A question of more direct importance, however, is projected in the cross appeal from the district court's order allowing a $500 attorney's fee out of Sarah's estate to be paid to counsel for appellants. This court has not been too rigorous in its scrutiny of reasonable allowances of attorneys' fees in litigation over wills and administration of estates; but wherever we have sanctioned them it will be found that in each instance the losing litigant and his counsel actually did contribute some helpful service towards the settlement of debatable legal questions confronting the administrator or executor which had to be adjudicated before the administration of the estate could be safely concluded. No such situation exists here. There has been a lot of litigation over these Pennington sisters' estates, indeed, but we are compelled to say we cannot discern any contribution which by their litigation these appellants have made to the benefit of either estate. It follows that the $500 attorney's fee allowed to appellants' counsel cannot stand, and the judgment of this court will be that the cause is remanded to the district court with instructions to eliminate its allowance of the $500 fee, and when that is done the judgment of the district court will be affirmed. It is so ordered.