No. 41,700

In re Estate of Edward Buckner, Deceased. (MYRTLE PERKINS, as Executrix of the Estate of Edward Buckner, Deceased, and MARJORIE K. KING, *Appellants,* v. GRACE EDWARDS, AMANDA HOLT, ALYCE P. WOODS, PAULINE FRANKLIN, THE SECURITY NATIONAL BANK, and L. C. MADDOX, As Register of Deeds, Wyandotte County, Kansas, *Appellees.*)

(348 P. 2d 818)

Opinion filed January 23, 1960.

*David W. Carson,* of Kansas City, argued the cause, and *Hylton Harman* and *Myles C. Stevens,* both of Kansas City, were with him on the briefs for the appellants.

*John E. Shamberg,* of Kansas City, argued the cause, and *Joseph Cohen, Charles S. Schnider, Joseph P. Jenkins, Barton P. Cohen, Jacob F. May, Jr.,* and *Norma Braly,* all of Kansas City, were with him on the briefs for the appellees.

The opinion of the court was delivered by

Robb, J.: A suit was commenced to have certain written transfers of property, real and personal, declared invalid, and to have a trust imposed on such real and personal property in plaintiff Marjorie K. King's favor for an undivided one-half interest therein. Consolidated therewith was a proceeding commenced in probate court to construe a joint, mutual and contractual will which was in due time certified to the district court. The consolidated case was submitted to the trial court upon an agreed statement of facts which included a partial record of a proceeding in the district court of the United States for the district of Kansas. The trial court held generally and in all respects against the plaintiffs and in favor of defendants. Plaintiffs appeal from the findings, judgment, orders, conclusions and rulings made by the trial court in a letter memorandum and further appeal from certain specific findings, orders and judgments contained in the trial court's journal entry of judgment.

This is another case where the record has been very well condensed by the parties but nevertheless for clarity a somewhat lengthy explanation will be necessary herein. Defendants L. C. Maddox and the Security National Bank are not involved in the appeal and will not be referred to in the discussion.

Edward Buckner and his wife, Sarah Chinn Buckner, had, by their joint efforts, accumulated a substantial estate consisting of a number of parcels of real property, personal property including personal effects, household furnishings, some investment securities, and a very lucrative and profitable taxicab business. The Buckners had no children and after becoming seventy years of age they consulted an attorney who drew a joint, mutual and contractual will for them which was executed by them on November 25, 1949. The record shows that Edward had three sisters (defendants Grace Edwards, Amanda Holt, and Alyce P. Woods), a niece, defendant Pauline Franklin, and a brother, Irvin Buckner. Sarah had a niece, plaintiff Marjorie K. King, the daughter of her deceased brother, Joseph Chinn.

Sarah died March 7, 1953, the will was admitted to probate, and Edward elected to and did take under the will. By stipulation of the parties the record in the federal court proceeding was made a part of the evidence in the instant proceedings. That record discloses in April, 1953, Edward had his niece, Pauline Franklin, and her husband move into his home and shortly thereafter Grace Edwards, his sister, began keeping books for the taxicab company. It further discloses the contents of an exhibit introduced in the federal district court from the probate court of Wyandotte county relating to the estate of Sarah Chinn Buckner which in pertinent part reads:

"The [probate] court further finds that by the terms of said will of decedent she willed, devised and bequeather to Edward Buckner all property, real, personal and mixed, owned by her at the time of her death, without restriction or limitations of any kind. . . .

"It Is Therefore, by the Court, Ordered, Adjudged and Decreed that . . . all funds and property, real, personal or mixed . . . owned by decedent at the time of her death, be and are hereby assigned to and vested in Edward Buckner as provided by said will. . . ."

The foregoing exhibit reflects the order of final settlement of the estate of Sarah. For convenience in discussing the questions in this appeal the contents of the will are here included.

After the usual introductory paragraph expressly revoking any and all former wills and codicils theretofore made by the testators, and directing that all debts be paid, the will provides:

"ITEM II.

"Upon the death of either of us, the survivor shall own and hold all property, real, personal and mixed, which either of us shall own at the time of said death without restrictions or limitations of any kind except as hereinafter set out:

"(a) Upon Mrs. Buckner's death, all of her clothes and personal belongings shall belong to our niece, Marjorie K. King, of Wichita, Kansas.

"(b) Upon the death of Mr. Buckner, all of his clothes, guns and personal belongings shall belong to his brother, Irvin Buckner.

"ITEM III.

"Upon the death of the survivor of us, all property, real, personal and mixed, of whatever same may consist and wherever same may be located owned by said survivor at the time of said death shall be divided as follows:

"(a) Our piano, General Electric refrigerator, all dishes, four small Oriental rugs. two antique gold-framed pictures, one gateleg table, one three-nest table and cedar chest shall belong to our niece, Marjorie K. King, of Wichita, Kansas.

"(b) If we shall own at the time of the death of the survivor one share of Pine Mountain Lake stock, same shall belong to our nephew, Charles James Brooks.

"(c) One half (½) of the rest, remainder and residue of the property and estate shall go to our niece, Marjorie K. King, of Wichita, Kansas, or if she shall not be living at said time, then her share shall be divided equally, share and share alike, among the heirs of her body, per stirpes and not per capita.

"(d) The other one half (½) thereof shall be divided between Mr. Buckner's sisters, namely Amanda Holt, Grace Edwards, and Alyce P. Woods, share and share alike, or if either of said sisters shall be dead, said sister's share shall belong to the heirs of her body, or if she die leaving no bodily heirs, then her share shall be divided equally among the surviving sisters or their surviving bodily heirs, per stirpes and not per capita.

## "Item IV.

"We expressly state that this is a joint and mutual will, contractual and testamentary in character, and can only be changed, altered or revoked during the lifetime of the parties by their joint consent, in writing, and each of us agrees to the terms hereof in consideration of the rights and privileges granted to each other to make disposition of the property as herein set forth.

"After the death of either of us, the survivor shall have the right and privilege of selling, mortgaging and disposing of any property coming to him or her by the terms hereof, without restrictions of any kind, except that if death of both of us arises out of a common accident or casualty at the same time or within a short time of each other, our estates shall be distributed as provided in Item II, a and b and in Item III.

## "Item V.

"We make no devise or bequest to the children of Joseph Chinn, deceased, brother of Mrs. Buckner.

## "Item VI.

"Upon the death of one of us, the survivor shall act as executor or executrix of the deceased's estate, without bond, and in case of the death of both of us by common accident or casualty at the same time or upon the death of the survivor of us, or within a short period of time of each other, we nominate and appoint Mr. Buckner's sister, Grade Edwards, to act as executrix, and if she cannot or will not qualify as such, we nominate and appoint our mutual friend, Mrs. Myrtle Perkins, of Kansas City, Kansas, to act as such executrix of this will.

"We authorize our said executor or executrix to do and perform all acts and things necessary to be done in the administration of the estate and to sell, mortgage and dispose of any of the property, real or personal, without first procuring an order of the Probate Court so to do.

"We nominate and appoint our attorney, Joseph Cohen, or the law firm of which he may be a partner, as attorney for our executor and/or executrix and our estate.

"In Witness Whereof, we, Edward Buckner and Sarah Chinn Buckner, husband and wife, have to this our last will and testament, consisting of four (4) typewritten pages, including the testamentary clause, placed our hands, on each page thereof, this 25th day of November, 1949, at Kansas City, Kansas."

Edward died September 7, 1955, and there remained approxi-

mately $8,000 in the estate to be divided under the residuary clause of the will because after Sarah's death, Edward had made gifts of over $60,000 worth of property, both real and personal, to his three sisters and to his niece, Pauline. We need not burden the opinion with the dates and amounts of these gifts.

On May 18, 1959, the trial court transmitted a letter to the attorneys wherein it was stated that the will is joint, mutual and contractual. Rearranging the order of the paragraphs thereof to read Item II, *Item IV* and Item III, the trial court further stated that the survivor (here Edward) took the property, subject only to the limitation that upon the death of the survivor (Edward) the property "owned by said survivor at the time of said death" should be divided according to the terms of the will. The survivor could not make a different testamentary disposition of the property. The provision that the survivor should have the right of *"disposing of any property . . . without restrictions of any kind . . ."* (our emphasis) when considered with the language of Item II of the will, that the survivor "shall own and hold all property . . . without restrictions or limitations of any kind . . ." was broad enough language to authorize a disposal by gift.

The letter of the trial court further stated: That "respondent [counsel for plaintiffs] tacitly concedes that the survivor would have had the right to make a gift of his property to a stranger, but argues that a gift to his own heirs, thereby defeating the right of the heirs of his wife to take under the will, violates the spirit and intent and thus the terms of the will"; that while it would be inequitable and unfair if Edward's gifts were made to defeat the terms of the will, that was not enough to justify a court reading into the will a prohibition which was not there. Under the trial court's interpretation of the will, Edward could make disposition of the property without restrictions of any kind and this included the right to make a gift of it; the parties had so intended and the court could not impose its ideas of what would have been fair and equitable. The remainder of the letter is not pertinent to the determination of our first question which is, did Edward under the contract with Sarah, as set out in their joint, mutual and contractual will, have the right, after Sarah's death and after he had elected to take under that will, to give away to his sisters and niece the property jointly acquired by him and Sarah?

On January 19, 1959, the trial court entered its formal journal

entry of judgment wherein the stipulations of facts were approved and adopted. The pertinent finding of fact in connection with the above question was that Edward had the right to make the gifts of real and personal property to his three sisters and niece. The trial court quieted title in real property Edward gave to his three sisters and niece, as shown by deeds, as well as in the stock he gave to his three sisters, and finally adjudged the three sisters and niece absolute owners of the personal property which Edward had given them. Costs were assessed against plaintiffs.

The trial court and the defendants are correct in their reasoning that when the language used in a will is clear and unambiguous, construction thereof is unnecessary and the will must be enforced in accord with its terms and provisions. This rule was correctly stated and applied in *In re Estate of Reynolds,* 173 Kan. 102, 244 P. 2d 234, where this court in essence stated that when a court is required to construe and determine the force and effect to be given the terms of a will, its first duty is to survey the instrument in its entirety and ascertain whether its language is so definite and certain there is no occasion for employing rules of judicial construction to determine its force and effect. (p. 104.) While this rule, as well as a number of other rules we shall mention later, is set out in *Zabel v. Stewart,* 153 Kan. 272, 109 P. 2d 177, it is not clear why the parties here discuss the point because no contract was there involved but only a joint will where the survivor had the right to sell, give away or will the property as he saw fit.

Our attention is directed to *Berry v. Berry,* 168 Kan. 253, 212 P. 2d 283, involving interpretation of a joint and mutual will wherein from the language thereof the will was determined to be contractual and under the rule that a will speaks as of the date of the death of the maker and following also the general rule that the intention of the testator is to be arrived at from a consideration of all facts and circumstances as of the date of making, it was determined such will was an agreement and contract, testamentary in form, whereby as to certain property held in joint tenancy by the parties prior to the execution of the will, the survivor took a life estate with remainder over. This case has only a limited application here on the point that a contractual will is not only testamentary in form but constitutes an agreement and contract between the parties who enter into such contractual will.

The Berry case discussed *National Life Ins. Co. v. Watson,* 141

Kan. 903, 44 P. 2d 269, and defendants also direct our attention thereto. While it was concerned with a joint, mutual and reciprocal will under which a surviving husband elected to take after his wife's death, it was held he was not thereby disabled from mortgaging his own property during his lifetime and after the death of his wife.

A later case which discusses both of the above cases is *Eikmeier v. Eikmeier*, 174 Kan. 71, 254 P. 2d 236, wherein separate contractual wills of Mary D., owner of certain land, and her husband Fred, owner of a quarter section of land, were consented to by the parties. Mary D. died and her will was being probated. Eight months after Mary D. died Fred married Mary A. Mary D.'s will gave Fred a life estate with remainder over in her separate property and Fred's will gave Mary D. a life estate with remainder over in his separate property. After he married Mary A., Fred undertook to convey his quarter section of land to her, reserving a life estate in himself. This court in essence said the testators in executing their separate wills pursuant to a contract performed the substance of their agreement and Mary D. further performed by dying, leaving her will in full force and effect while Fred further performed by accepting benefits under her will. (p. 78.) If Mary D.'s performance was sufficient to remove the above contract from the inhibitions of the statute of frauds in the Eikmeier case, then Sarah's identical performance in our present case would possess equal force and effect. The opinion in the Eikmeier case concluded as follows:

"With specific reference to defendants' argument that the contract cannot be construed as limiting Fred to a life estate in his own property, we simply cannot agree. Holding, as we do, that Fred's will was the product of a contract and agreement, he is bound by its terms, even though the practical result thereof is that he is enjoined and prohibited from divesting himself of the tract during his lifetime." (p. 81.)

*Lewis v. Lewis*, 104 Kan. 269, 178 Pac. 421, cited in the Eikmeier case, is one of our landmark decisions on mutual, reciprocal and joint wills and similarly to the Eikmeier case, the wife in the Lewis case died and the husband married a second wife who, after the husband's death, elected to take under the law. The contention was that the subsequent marriage revoked the mutual and reciprocal joint will of the husband and the first wife. It was admitted that at the time the Lewis case was written (1919) some confusion existed in the authorities on a survivor's right to revoke such a will, but it was held that after the death of his first wife and after he had

accepted the benefits conferred by the will, the husband could not revoke the will so as to render it inoperative. The court stated:

"Even if the testamentary part of the instrument now under consideration had been revoked, the contractual part could be enforced by the plaintiffs." (p. 274.)

The above quotation was followed by citation of many of our decisions. The result in the Lewis case was the second wife took nothing.

The trial court found the provisions of the will presently under consideration clearly indicated the survivor could not make a different testamentary disposition of the property. The next part of the finding was that the provision "disposing of any property . . . without restrictions of any kind . . ." when considered with Item II of the will was broad enough to authorize a disposal by gift. We agree that disposing of any property "without restrictions of any kind" would authorize disposal by gift, but when it is admitted that Edward could not make a different *testamentary* disposition of the property, does that not restrict Edward's authorized disposal by gift? To go one step further, can we ignore and separate the three preceding words, "selling, mortgaging and," which are followed by "disposing" in order to authorize a gift whereby Edward could revoke and make the will inoperative after Sarah's death when he had accepted benefits under the will? We think the answer to each of these questions must be in the negative. This forces us to the determination that there is ambiguity in this will (*In re Estate of Blank*, 182 Kan. 426, 431, 320 P. 2d 775) and therefore, general rules in regard to construction of wills must be considered in order to determine the intention of Edward and Sarah at the time they entered into the contract that their lawyer reduced to writing as a joint, mutual and contractual will, which they executed. A court cannot pick and choose, separate and rearrange single isolated provisions of a will in order to effectuate the court's desires or notions of what the testator should have contracted. (*Shannep v. Strong*, 160 Kan. 206, 160 P. 2d 683.)

A similar contractual will was considered in *Beall v. Hardie*, 177 Kan. 353, 279 P. 2d 276, where it was provided that all property left by the deceased spouse should come into the possession and be the sole and absolute property of the surviving spouse who was given the right to sell any of the property upon the survivor's wish or desire, with remainder over to the children. The survivor was vested with a life estate and power to sell any portion thereof with

remainder to the children. The children took a vested remainder subject to defeasance by the exercise of the survivor's power to dispose of the property. (p. 358.) The sale in that case was for consideration so far as the record showed but in our present case the transfers of property were gifts. We cannot say that the language of the Beall case would be authority for the proposition that had there been a gift as here, the deed would have been set aside but the language in the Beall case contains a strong inference thereof.

The Shannep case (p. 211) repeats one of the general rules regarding the interpretation of the entire language of a will to determine the intention of the testator. The Beall case (p. 356) repeats another phase of those rules, and in *In re Estate of Weidman*, 181 Kan. 718, 314 P. 2d 327, some of our many opinions and the general rules of construction prescribed therein are restated and discussed. It would unduly lengthen this opinion to reiterate those rules now. While it was contended that Fred's will in the Weidman case was his separate will, covering his separate property with his wife, Julia, joining in the execution thereof, it was determined from the facts and circumstances that the will of Fred and Julia was contractual, joint and mutual. Also, the terms of the will were ambiguous and required the application of general rules of construction. The Weidman case recognized that "each will must be construed by its own terms and when ambiguous in accord with the intention of the particular individual and/or individuals executing the instrument. . . ." (p. 728.)

The Weidman case and *Lowdermilk v. Lowdermilk*, 183 Kan. 174, 326 P. 2d 248, are quite similar to and almost decisive of the case now before us but since no two wills appear to be identical in terms, intention and composition, we merely refer the reader to those two cases and shall not repeat the wills and opinions here.

Our present will was drawn by an able attorney as scrivener and had Edward and Sarah intended to empower the survivor of them to give the share of the decedent's relative or relatives covered by the contract in the will to the survivor's relative or relatives, then and in that event the attorney should have made provision therefore in proper technical terms. Had such terms been used we would have been obliged to construe them in accordance with their technical meaning. (*In re Estate of Woods*, 181 Kan. 271, 277, 311 P. 2d 359.)

Counsel for plaintiff Marjorie King cites as applicable here two cases from foreign jurisdictions. Examination reveals that while those cases are not identical in every respect, they are sufficiently similar to justify the application of some of their reasoning. In the first case (*Rastetter v. Hoenninger*, 214 N. Y. 66, 108 N. E. 210) the following appeared in the court's opinion:

"The testators, husband and wife, provided first for the survivor and ultimately for their children, in whose welfare they were both mutually concerned.

. . . . . . . . . . . . .

"Whilst importing a contract the instrument is testamentary in character and as to the property of each speaks from his death. Each was at liberty during his lifetime to use his own as he saw fit, short of making a different testamentary disposition or a gift to defeat the purpose of the agreement, which was that upon his death each was to leave the property of which he was then possessed in the manner agreed upon. Very likely either during their joint lives might upon notice to the other have revoked; but, after the agreement had been executed by one dying without making a different testamentary disposition of his property and after the acceptance by the other of the benefits of the agreement, it became obligatory upon the latter and enforceable in equity upon his death." (pp. 72, 73.)

In the second case (*Heller v. Heller*, 233 S. W. 870) parts of the will involved in the Texas court's discussion are pertinent in our present case. They read:

"IX. After the demise of both of us . . . all of the then remaining property, both real or personal property, shall be equally divided between our children. . . .

"X. The survivor of either of us . . . shall have the right to sell or otherwise dispose of any part of our community property and invest the proceeds of such sale or disposition as he or she may think best." (p. 870.)

The court in construing the will stated:

"Section 10 of the will . . . expressly authorized Mrs. Heller to sell or otherwise dispose of any part of the community property and to invest the proceeds of sale or to make such disposition as she might deem best. While the general power of disposition of the property conferred by this section of the will considered alone is unrestricted, the will must be construed as a whole, and this provision should not be construed as authorizing Mrs. Heller to give or devise the property or any portion of it contrary to the express provisions of section 9 of the will, which directs that upon the death of both of the testators all of the property shall be equally divided between all of their children.

"To give section 10 a construction which would authorize Mrs. Heller to give the property to one of these children would defeat the manifest purpose

and intention of the testator as evidenced by the will as a whole, and it should not be so construed." (pp. 871, 872.)

Then follows a discussion about consideration for the disposition made by Mrs. Heller to one of her children which is of no concern to us here since we have outright gifts. Later the Texas court further discussed the matter of consideration as follows:

"On the other hand, if the only consideration for the conveyance was, as stated in the deed, the sum of $10 and love and affection, the transaction was manifestly an attempt on the part of Mrs. Heller to give preference to one of her children in the disposition of the community estate held in trust by her under the will of her deceased husband contrary to the clearly expressed desire and intention of the testator and should not be upheld." (p. 872.)

The Rastetter and Heller cases were both remanded to the trial courts on other questions not pertinent hereto.

Summarizing, this husband and wife, both past seventy years of age, had, through the years and by their joint efforts, acquired a sizeable estate consisting of both real and personal property. They had no children of their marriage to inherit their estate and they consulted an attorney to have a will drawn as a contract to give Sarah's half interest in the residue of the state to her niece, Marjorie, and to give Edward's half interest in the assets of the estate to his three sisters; Grace, Amanda, and Alyce. For reasons already narrated herein, we think the terms of the will were uncertain and ambiguous and general rules of construction apply whereby we conclude that the words, "selling, mortgaging and disposing," when considered with the entire contents of the will in the order in which those contents appear therein, and not by rearranging them, infer consideration. The result is that Edward did not have the right to give Sarah's half of the estate, which was set apart to Marjorie under the terms of his contract with Sarah, to someone else without good and sufficient consideration. The intent of Sarah and Edward was to give their respective relatives a definite share in their estate and after the death of Sarah with no change in the contractual will and Edward's acceptance of benefits under the contractual will, he could not defeat that intention. Edward has attempted to defeat the only reason Sarah had for entering into such a special kind of will and equity will not permit such attempt. The gifts and warranty deeds to the defendants should be set aside and held for naught and the estate settled according to the terms of the will.

Questions regarding the character of the deeds to Edward's three sisters and to his niece need not now be determined.

Reversed with directions to enter judgment in accordance with this opinion.

Price, J., dissents.