No. 45,877

In the Matter of the Estate of Newell A Thompson, deceased. (M. D. KENNEDY, Administrator, Estate of Bertha O Thompson, deceased, *Appellee,* vs. BERNIE C. CLOWE, Executor of Estate Newell A. Thompson, deceased, *Appellant.*)

(478 P. 2d 174)

Opinion filed December 12, 1970.

*Walter P. Robertson,* of Weary, Weary & Chartier, of Junction City, argued the cause and was on the brief for appellant.

*Phillip H. Schuley,* argued the cause, and *C. L. Hoover,* both of Hoover, Schermerhorn, Clement & Schuley, of Junction City, was with him on the brief for appellee.

The opinion of the court was delivered by

FATZER, J.: This was a proceeding commenced in the probate court to determine whether the decedents' joint will was contractual.

On October 2, 1929, Newell A. and Bertha O. Thompson, husband and wife, executed a joint will, which, omitting the attestation clause, reads:

"Joint Last Will and Testament of Newell A. Thompson and Bertha O. Thompson, Husband and Wife.

"We, Newell A. Thompson and Bertha O. Thompson, Husband and Wife, of Geary County, Kansas, being of sound mind, memory and discretion, and being—under no restraint, do make, publish and declare this, as and for our joint Last Will and Testament:

"First: We direct that out of our estate our funeral expenses, expenses of last sickness and all other of our just and lawful, debts be paid.

"Second: In the event of the death of either of us, the survivor shall take all of our property, real, personal and mixed, whether the same be owned by us, jointly or severally.

"Third: We make no provision for our children, Ray Thompson and Fern Thompson, leaving it to the survivor of us to make such provision as he or she sees fit.

"Fourth: Upon the death of either of us, the survivor shall pay the funeral expenses and expenses of the last sickness of the deceased one, and all—lawful debts of the one deceased.

"Fifth: In the event of the death of either of us, the survivor shall act as executor or executrix, and it is our request that no bond shall be required of such executor or executrix, for the execution of his or her trust.

"Sixth: We hereby revoke all former wills or codicils thereto, made by us or either of us.

"In Testimony whereof we have hereunto subscribed our names, at Junction City, Kansas, this 2nd day of October 1929.

"/s/ Newell A. Thompson
"/s/ Bertha O. Thompson"

On October 12, 1966, Newell executed a subsequent will purporting to revoke the former will. Bertha, although living, did not join in executing the subsequent will, or consent thereto.

On December 30, 1967, Newell died and his will dated October 12, 1966, was admitted to probate. The probate court elected on Bertha's behalf to take under the law and not under the terms of Newell's October 12, 1966, will, she being incapacitated.

On May 18, 1968, Bertha died and the joint will she and Newell executed on October 2, 1929, was admitted to probate.

On November 12, 1968, the administrator c. t. a. of Bertha's

estate filed a petition for allowance of claim in Newell's estate alleging that the will entered into and executed on October 2, 1929, between Bertha and Newell was a joint, mutual, and contractual will whereby the survivor of either of them should take all of the property owned by them jointly or severally, and that Newell breached such contract by the execution of his subsequent will not in accordance with the provisions of the joint, mutual, and contractual will of October 2, 1929. The prayer was for judgment in a sum equal to the entire residue of Newell's estate remaining after payment of all his debts, and after deducting the portion theretofore set aside by the probate court to Bertha and her estate.

The executor of Newell's estate denied that the joint will of October 2, 1929, was a mutual and contractual will of Bertha and Newell.

When the action was heard in the district court no testimony was presented or offered by the parties to the proceeding. Upon consideration of the joint will of October 2, 1929, the district court made findings of fact and conclusions of law. The court's findings are substantially in accord with those factual recitations heretofore set forth. Conclusions 8 and 9 of the court read:

"The court finds that the will executed October the 2d, 1929, is contractual in nature. The court further finds that paragraphs 1, 2, 4, 5 and 6 are paragraphs included in most wills, if not all, and do, because said will is joint, use the plural pronouns in referring to the parties to the will, and this is done without exception.

"The court then looked at the third paragraph of said will, which states as follows: 'We make no provision for our children, Ray Thompson and Fern Thompson, leaving it to the survivor of us to make such provision as he or she sees fit.' The court believes and finds that by the exclusion of the children of the parties hereto, these being their only children, *that agreement had to be reached between the parties prior to the will's being executed.*" (Emphasis supplied.)

In harmony with the foregoing conclusions, the district court directed the probate court of Geary County to act in accordance with its findings and conclusions with respect to the petition filed in Newell's estate. Thereafter, Newell's executor perfected this appeal.

The sole issue before this court is whether the joint will was made pursuant to a contractual agreement. Joint execution of a will does not render the will irrevocable. The making of a will so as to render it irrevocable must be on the basis of a contractual agreement. Such contractual agreement may be shown by extrinsic evidence (*In re Estate of Wade,* 202 Kan. 380, 449 P. 2d 488), or such

agreement may be shown or implied to exist by the terms of the will itself. The terms of a will may show an implication that its execution was the product of a preexisting agreement. (*In re Estate of Chronister*, 203 Kan. 366, 454 P. 2d 438.) The fact a will contains no reference to an agreement is not conclusive. A contract may be implied from the known circumstances under which the parties execute a joint will, such as their family relationship as reflected by the will itself, its terms and its execution, and the intention of the testators as gathered from the four corners of the instrument itself. In such a case, extrinsic evidence is not admissible for the purpose of proving otherwise.

In *In re Estate of Chronister*, supra, this court, after a painstaking review of the many cases of this state in which wills were claimed to be contractual, Mr. Justice Fontron, speaking for the court, stated the following basic rules:

". . . (1) Whether a will is contractual, be it a joint will or one of separate wills, is a question of fact which must be established by proof. (2) The mere fact that a will is joint does not in and of itself establish it to be the result of a preexisting agreement. (3) A joint and mutual will and the terms and provisions thereof, may be considered sufficient as circumstantial evidence to establish that it was executed pursuant to an agreement. (4) Where a joint will shows *on its face* by the terms and provisions thereof that it is contractual in character, extrinsic evidence is not admissible for the purpose of proving otherwise. (5) Where there is ambiguity from the language used in a joint will as to whether or not it is based on a contract, extrinsic evidence is admissible to establish either the existence or nonexistence of a contract." (l. c. 372.)

We are of the opinion that the will itself, based upon an examination of its terms, and its execution, evidences Bertha and Newell reached a full understanding and agreement as to the terms of their joint will prior to its execution. The use of plural pronouns, the identical disposition of their property to the survivor, the mutual exclusion of heirs, devisees and legatees, the provision for ultimate disposition of their property by the survivor "as he or she sees fit," and their joint revocation of all former wills or codicils thereto, sufficiently evidences an understanding between the joint testators by which they intended to bind themselves. (*In re Estate of Chronister*, supra, p. 373.)

The appellant argues that the third provision of the will was merely to acknowledge the existence of the children, and was not evidence of an agreement or understanding between Bertha and

Newell. The district court did not so find, and we believe its determination to be correct. Ray and Fern Thompson were the only children of the parties and under the will they were to be provided for by the survivor "as he or she sees fit." We ask the same question as was asked in *Lewis v. Lewis*, 104 Kan. 269, 178 Pac. 421:

". . . How could such a will be voluntarily executed if there was no agreement or understanding that it would be made? The will itself, its terms, and its execution, are evidence that such a contract was made . . ." (l. c. 273.)

And so here. We do not presume, under the attending circumstances, that a father and mother would disinherit their only children by written instrument, unless they had a prior agreement or contract with each other that the survivor would make such provision for their benefit as he or she saw fit.

The intention of the testators can be gleaned from the four corners of the instrument and it may be said the will was executed pursuant to a contractual agreement. The parties reached agreement as to the disposition of their estate upon the death of either of them, that the survivor be left free to make such provision for the children as he or she might see fit. Such a provision could only have been reached by agreement of the parties. (*In re Estate of Tompkins*, 195 Kan. 467, 407 P. 2d 545; *Beall v. Hardie*, 177 Kan. 353, 279 P. 2d 276.)

Bertha survived Newell, and thereby performed her part of the contract, but Newell breached their agreement when he executed his subsequent will in October, 1966.

Under the facts and circumstances, the district court was justified in finding the terms of the will showed a contractual agreement was reached between the parties when the joint will was executed, on the basis of the factors enumerated in the *Chronister* case. The judgment is affirmed.

Fromme, J., dissenting: The majority opinion has the effect of approving a distribution of the property of Newell A. and Bertha O. Thompson as if both died intestate, without a will. In such case the property passes to their child and grandchildren. Naturally, I would like to be able to concur in that result but I am unable to do so for the reason there is no evidence, circumstantial or direct, which will sustain a finding that the 1929 will was executed by the parties as a result of an agreement or compact not to revoke that will. Therefore the husband's 1966 will should be given effect.

A joint will is one in which the same paper is executed by two persons as their respective wills. Mutual wills are the separate testaments of two persons, more or less reciprocal in their provisions. These instruments may or may not be accompanied by or result from a compact not to revoke them, though some courts imply such a compact in the case of certain joint wills. (Atkinson on Wills [Second Edition] p. 222.)

In Kansas an agreement not to revoke has been implied under certain circumstances. Such an agreement has been implied by our court when the joint will shows on its face and by its terms that it is contractual in nature and its provisions imply a pre-existing agreement not to revoke. (*In re Estate of Chronister*, 203 Kan. 366, 454 P. 2d 438.)

However, the fact that a will is jointly executed does not and should not establish, in and of itself, that it is the product of a pre-existing agreement not to revoke. (*In re Estate of Chronister*, supra.)

In the present case there was no direct evidence of a pre-existing agreement not to revoke the will. Therefore, if we say an agreement existed, it must be implied from the face of the will based upon its terms and provisions. Further it must be implied regardless of the fact that the husband revoked the former will by executing a later will making final disposition of his property after his wife became incapacitated. The joint will executed in 1929 merely contains reciprocal provisions giving the property of the parties to the survivor.

In the will there is no ultimate or final disposition made of the property to third parties. In fact, the will by its terms recognizes the right of the survivor "to make such (later) provision as he or she sees fit". (Third paragraph.)

Although there has been some confusion arising from our opinions, it is generally agreed in Kansas that a contractual will is one which is the result of a pre-existing agreement to make *an ultimate and final disposition of the property* of both parties. When a joint will is executed under such an agreement the execution renders the agreement complete and irrevocable. In such case neither party may breach the agreement unless there is mutual consent to do so. The early Kansas cases on this subject, including *In re Estate of Pennington*, 158 Kan. 495, 148 P. 2d 516, are collected in an article in

the April 1946 Kansas Judicial Council Bulletin prepared by former Justice William A. Smith of the Kansas Supreme Court. The article is helpful.

It has been generally held in Kansas that a contract to make an irrevocable disposition of property may be shown by extrinsic evidence. (*In re Estate of Wade,* 202 Kan. 380, 449 P. 2d 488; *In re Estate of Tompkins,* 195 Kan. 467, 407 P. 2d 545; *Eikmeier v. Eikmeier,* 174 Kan. 71, 254 P. 2d 236.)

Where no evidence is available or introduced the will by its terms and provisions may establish *by implication* agreement *not to revoke* based upon a presumption that such a will had to be the product of a pre-existing agreement to make a final irrevocable disposition of the property. (*In re Estate of Chronister,* supra.)

However, a mere agreement to jointly execute a single paper disposing of property does not render the will irrevocable. It is necessary that the evidence, circumstantial or otherwise, establish a compact to make an ultimate and final disposition of the property.

In this case neither the trial court nor this court finds that the will was to be an ultimate and final disposition of the property. The trial court's judgment and this court's decision rests on a finding that the will "is contractual in nature".

When two parties sign a single paper, such as a will, they naturally have agreed to use a single paper to dispose of property, but that does not establish an agreement to make the will irrevocable. A finding that the present will is "contractual in nature" is not controlling. It does not support the judgment of the trial court which had the effect of finding and enforcing a pre-existing agreement to make an irrevocable disposition of the property.

It is a general rule that a will jointly executed by two persons is revocable by either of them. (See Atkinson on Wills [Second Edition] p. 224, and *In re Estate of Pennington,* supra.) A joint will in effect is the separate will of each of the parties. An exception arises when there is a compact between the parties that the joint will shall be a final disposition of the property.

In the present case there was no extrinsic evidence of such an agreement. If such an agreement is determined it must be based upon the wording in the will itself.

Let us consider the present will. It was executed by two persons. It was a single paper. It purported to dispose of the property belonging to the parties. Therefore, it was a joint will. The use of

plural pronouns (we, our and us) is standard procedure dictated by the very nature of the joint execution of a single paper. This use of plural pronouns does not establish a presumption of a pre-existing *contract not to revoke the will.*

A joint will although executed by two persons and stated to be their joint will but disposing only of property owned solely by one of them is not the joint will of both. It is the individual will of the party owning the property. (97 C. J. S. Wills § 1364 [*c*] p. 286; 57 Am. Jur. Wills § 681 pp. 459, 460.)

In the present case no evidence appears in the record to establish that Bertha O. Thompson owned any property in 1929 when she executed the will. In the annotation in 169 ALR 20 it is stated:

"An instrument in the form of a joint will may be sustained as the valid separate will of one of the testators, where he owns all the property bequeathed, on the theory that the joinder of the other in the execution of the instrument is without legal significance. Especially is this true in the case of a will executed by husband and wife where the former owned all the property and the latter appended her signature for the purpose of showing her assent to the will. . . ."

It follows that *if* Bertha O. Thompson owned no property in 1929 the execution of the instrument was without legal significance as to disposition of her estate, for she had no estate.

The will contained a reciprocal provision that the survivor was to take all property of the first to die. This does not raise a presumption that there was a pre-existing agreement not to revoke. The parties were husband and wife. The mutual love and concern for each other may well have been the motivating factor for such a reciprocal provision. It is a common occurrence for one spouse to leave his or her property to the surviving spouse. Surely such a common occurrence, although carried out by means of a joint will, raises no presumption that an agreement not to revoke the will was entered into by the parties.

In 97 C. J. S., Wills § 1364 e (2) it is stated:

"Mutual wills, *if they contain no provision for third persons,* constitute a single will, which is the will of the first to die and has no further existence as the will of the survivor." (Emphasis added.)

(See also *In re Estate of Croulek,* 252 Iowa, 700, 107 NW 2d 77.)

The above rule is also applied to jointly executed wills. In Atkinson on Wills (Second Edition) at p. 223 it is said:

"If the provisions of reciprocal wills—whether joint or separate—are solely

in favor of the co-testator, the survivor takes all and he may then make any will he wishes or may die intestate. . . ."

The parties to the present will went a step further by inserting the third paragraph. The intention of the parties is clearly stated therein. Each intended the surviving party to make a later disposition of the property. The third paragraph clearly presupposes that no agreement existed which prevented the parties from changing the disposition of property they had made. Where such an intention is expressed, as in the present will, it militates against any presumption that the will was intended to be irrevocable.

In 1966, after the wife became incompetent, Newell A. Thompson made a separate will. This will set up a testamentary trust in favor of this wife during her lifetime and on her death made a final disposition of his property. *If the wife had predeceased Newell A. Thompson* the 1966 will would in no way constitute a change in the disposition of property contemplated by the prior 1929 will. Therefore, the execution of the 1966 will would not have violated the agreement or the terms of the 1929 will for the 1929 will authorized a final disposition of the property by the survivor. The present decision of the court is untenable because it has the effect of enforcing the prohibitive effect of such an agreement based on which party dies first. That is, if the husband dies first (as in the present case) an agreement not to revoke is implied and enforced in favor of the wife, but if the wife dies first the husband would then have been authorized by the third paragraph of the 1929 will to make a final disposition of his property. This court should hold either the husband is authorized to make final disposition of his property under these circumstances or he is not. It should never be left to depend on future circumstances.

An examination of our former decisions indicates that this court has never construed the terms of a joint will to imply an agreement not to revoke unless the will under consideration *made ultimate disposition of the property to third parties.* See *In re Estate of Chronister,* supra; *In re Estate of Wade,* supra; *In re Estate of Tompkins,* supra; *Parsons v. Smith, Trustee,* 190 Kan. 569, 376 P. 2d 899; *In re Estate of Jones,* 189 Kan. 34, 366 P. 2d 792; *In re Estate of Buckner,* 186 Kan. 176, 348 P. 2d 818; *In re Estate of Miller,* 186 Kan. 87, 348 P. 2d 1033; *In re Estate of Weidman,* 181 Kan. 718, 314 P. 2d 327; *Beall v. Hardie,* 177 Kan. 353, 279 P. 2d 276; *Eikmeier v. Eikmeier,* supra; *Berry v. Berry,* 168 Kan. 253, 212 P. 2d 283; *In*

*re Estate of Adkins,* 161 Kan. 239, 167 P. 2d 618; *In re Estate of Pennington,* supra.) In each of these cases the will provided for a final disposition of the property to third persons. None of the wills contained the express provision contained in the third paragraph of the Thompson will.

In our present case there is no extrinsic evidence of a contract. The absence of a final disposition of the property to third parties militates against any presumption that an agreement not to make a later will existed. The third paragraph of the will expressly authorizes the survivor to make a later final disposition of the property.

There should be no contract presumed in this case where the joint will contains only reciprocal provisions for the two parties and makes no final disposition of the property to third parties.

Accordingly I would reverse the judgment of the district court and direct the court to deny the claim of the administrator with the will annexed of the estate of Bertha O. Thompson.