**Decided December 2, 1981**

238

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

APPELLATE DIVISION

IN THE MATTER OF THE ESTATE )    DCA NO. 80-9022
                           )
           OF              )    CIV NO. 79-163
                           )
JOSE DIAZ TORRES and ASUNCION  )   PROBATE NO. 5-79
ADA TORRES,                )
                           )    O P I N I O N
           Deceased.       )
_____)

Before:  LAURETA, DUENAS, District Judges, and SOLL,
         Designated Judge*

OPINION

LAURETA, District Judge.

I

Procedural Background

Probate Case No. 5-79 was filed by Pedro A. Torres (one
of the "objectors") in 1979.  That action offered for probate
a statutory will executed by his mother Asuncion A. Torres
subsequent to the death of her husband Dr. Jose D. Torres.
This statutory will purports to distribute real property of
her and her husband, as well as her own personal property.
Maria Torres Flores (one of the "petitioners"), the oldest
child of Dr. and Mrs. Torres, filed the action herein which
offered for probate the "testamento," or customary will, which
was signed by both Dr. and Mrs. Torres in 1971.  The testamento
distributes the real property of Dr. and Mrs. Torres among their
heirs.

*Commonwealth Trial Court Judge sitting pursuant to 48 U.S.C.
 § 1694b

239

Hearings in this action were held on numerous occasions, including March 7 and 13, 1980, and August 12 and 13, 1980. A Memorandum Opinion was issued on March 14, 1980, and an Order admitting the testamento to probate was entered on March 21, 1980. A second Memorandum Opinion was issued on September 2, 1980, and a Decree of Final Distribution which decreed a distribution of the real property in accordance with the testamento was entered on October 1, 1980. Pedro A. Torres and two of his siblings appeal from that judgment. Probate Case No. 5-79 is not on appeal here inasmuch as a decree of final distribution has not yet been requested by executor Pedro A. Torres. We affirm the trial court's judgment for the reasons later discussed in this opinion.

## II

### Factual Background

Jose D. Torres and Asuncion A. Torres, husband and wife, were the parents of five children. They are Mariquita (Maria) T. Flores, Pedro A. Torres, Lorenza T. Duenas, Asuncion A. Torres, and Francisco A. Torres. All the children live on Saipan except for Pedro, who has lived elsewhere for about 30 years. Jose D. Torres, commonly known as Dr. Torres, and his wife had numerous grandchildren, some of whom they raised and from whom they received assistance. (TB* 13-14, 24-25, 72, 80, and 132-135).

In 1971, Dr. and Mrs. Torres visited the office of then mayor of Saipan Vicente D. Sablan and requested that a testamento be prepared for them. A testamento typewritten in the Chamorro language was prepared, and both Dr. Torres and Mrs. Torres and witness Mayor Vicente D. Sablan signed it on May 14, 1971. (TA 10-11).

- - - - - - - - - -

*Two transcripts of the proceedings in the trial court are part of the record on appeal. The first concerns proceedings on March 7 and 13, 1980, and is referred to as "TA" in this opinion. The second concerns proceedings on August 12 and 13, 1980, and is referred to as "TB" in this opinion.

The testamento states in part that:

In the event of God's disposition, and one of us leaves the world first, this will for "partida" among our children and their children shall be followed according to the disposition herein.

That document provides that the lands held by Dr. and Mrs. Torres shall be distributed among their five children and certain grandchildren in a designated manner. At the time of Dr. Torres' death in 1976, neither Dr. Torres nor Mrs. Torres had destroyed or otherwise revoked the testamento, or indicated in any way that they considered the testamento invalid. (TA 65).

In 1978, more than two years after Dr. Torres died and five months before Mrs. Torres died, she signed a will in accordance with the American-style, statutory requirements which drastically altered the distribution of the testamento and eliminated several beneficiaries. This will has been referred to as the "statutory will." Mrs. Torres also executed a deed to a parcel of land in Chalan Kiya with a concrete house in favor of a person other than the person who was named in the testamento. (Objector's Exhibits B and C).

At about this time, son Pedro A. Torres obtained the original of the testamento from Mr. Sablan and the oldest daughter Maria thereafter obtained the executed carbon copy of the testamento from Mr. Sablan, which is the document admitted to probate. (TA 67-68 and 77, TB 156). Pedro A. Torres then filed Probate Case No. 5-79 and offered the statutory will for probate without making any mention of the testamento which he had in his possession. A short time later petitioner Maria Flores filed this action which offered the testamento for probate.

241

## III

### Issues

The issues presented before this court are:

1.  Whether the testamento of Dr. and Mrs. Torres is a valid customary will pursuant to 13 T.T.C. § 2.

2.  Whether the surviving wife, Mrs. Torres, had the right to revoke or alter the testamento after Dr. Torres died.

## IV

### Discussion

#### A.  The Testamento

Title 13 of the Trust Territory Code § 2 gives recognition to wills made under customary law.[1] The trial court, after extensive testimony by witnesses for both parties, found that the testamento is a valid will made in accordance with the Chamorro custom.  Memorandum Opinion dated September 2, 1980, pp. 1 and 2.  The objectors contend that the trial court made an erroneous finding of fact when it found the testamento a valid will rather than merely a statement of intent as to what the parties desire to have done.  While objectors refer to the trial court findings with respect to the testamento as "an abuse of the Court's discretion with respect to determining the facts of the case," the true basis of their contention is to

- - - - - - - - - -

[1]The language of the statute provides:

> Nothing in this Chapter shall prevent the making of a will in accordance with the customary or written law of the part of the Trust Territory in which it is made or in which property covered by it is located, nor shall any thing in this Chapter affect the validity of a will made in accordance with such customary or written law.

242

challenge the trial judge's factual findings. Rule 52(a) of the Commonwealth Trial Court's Rules of Civil Procedure (which is identical to Federal Rule of Civil Procedure 52(a)) mandates that "findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." A finding is clearly erroneous when, even though some evidence supports it, the entire record produces the definite and firm conviction that the court below committed a mistake. South Seas Corporation v. Sablan, DCA No. 80-9023 and 80-9005 at 5. (N.M.I., App. Div. Oct. 21, 1981). (citations omitted)

Our review of the transcripts[2] leaves no reasonable doubt of the correctness of the trial court's finding that the

- - - - - .- - - - -

[2]The testimony of objector's expert witness, Vicente D. Sablan, who was a signatory witness in the testamento, is as follows:

> Q: Mr. Sablan, could you please explain in Chamorro what the word "Testamento" means?
> A: If I can say - -
> Q: Excuse me, for this particular question, please answer this particular question in Chamorro and not in English, and it will be translated for us.
> A: The meaning of the Testamento is very broad. According to Chamorro, Testamento means in Chamorro that it signifies what does a person wants. We could say a will, a deed or what two parties want.
> (TA 63 at line 19 to 64 at line 3)
> Q: Now, your testimony at the prior hearing when the question was asked of you "what does 'Testamento' mean in English," wasn't your answer at that time that it is a will or a deed or what two parties want?
> A: To my understanding, yes, but in part. To my understanding, yes, but to a lawyer I do not know.
> (TB 123 at lines 10-15)

The trial judge's inquiry of objector's second expert witness, Juan Pangelinan, is also conclusive of the testamento's validity as a will:

> Q: Mr. Pangelinan, define for me if you would "Testamento".
> A: As close as I can get to that, your honor, is will, will.
> (TB 113 at lines 20-23)

Finally, petitioner's expert witnesses, both upon direct and cross-examination testified that a testamento is consistent with the requirements of a partida (see Part B of this Discussion) under Chamorro custom.
> (TA 34 at lines 18 to 21, 54 at lines 15-25, 101 at lines 15-20)

testamento is a valid will.  Based on our review of the entire record, including the testimony quoted in footnote two above, we hold that the trial court's factual determination was supported by substantial evidence and was not clearly erroneous.

B.  Authority of Mrs. Torres to Alter or Revoke the Testamento

The objectors here contend that the trial court erred as a matter of law when it held that Mrs. Torres was bound by the testamento and did not have the authority to make different dispositions after the death of Dr. Torres.  The trial court held that a testamento is, in effect, a written partida, and that it has an established place in Chamorro custom.

A partida is the designation of division of family property under the Chamorro custom.  It is a system of distribution of the family land where:

> [A] father should at some time before his death call his family together and designate a division of all family lands, including those brought in by the wife, (and sometimes also important pieces of personal property) among the children, or the children and his wife.  This is done presumably with the consent of the wife and children, but the principle of parental respect is traditionally so strong that the father's word is not supposed to be disputed, though he is expected to act fairly by Chamorro standards.
>
> Blas v. Blas, 3 T.T.R. 99, 108 (Marianas Is. District 1966).

Because a father, under the common partida, is the sole arbiter of how family land is to be distributed, the trial court concluded that a wife (such as Mrs. Torres) similarly is obligated to follow the wishes of her deceased husband (in this case that of Dr. Torres) in a written partida (namely, a testamento).  We agree with the trial court's conclusion that a testamento is a written partida which preserves in writing the intent and directions of the male head of the family in regards to the distribution of the family's property.

We hold that under Chamorro custom, a testamento entered jointly by husband and wife may not be altered by a survivor wife and that any property distributed thereunder vests to the devisee upon the death of the father.

The trial court also admitted the testamento to probate on a separate and distinct ground. It held that Mrs. Torres' signature in the testamento is an affirmance of the distribution outlined therein. The court supported this conclusion by quoting paragraph two of the preamble of the testamento[3] which clearly indicates that the testamento in question is the American equivalent of a joint will. "A joint will is best defined as a single testamentary instrument which contains the wills of two or more persons, is executed jointly by them, and disposes of property owned jointly, in common, or in severalty by them." 79 Am Jur 2d, Wills, § 754. It is usually the product of a contract between two testators whereby they both agree to execute a will containing reciprocal provisions. Although there was no separate contract or agreement produced in the trial, the validity of the testamento still stands in light of the language contained in its preamble.

A will which is jointly executed may furnish in itself prima facie proof that it was executed pursuant to a contract between the testators, notwithstanding that it does not expressly purport to have been made pursuant to contract, does not contain the word "contract" or "agreement" or include an express promise that the survivor will carry out the disposition contained in the will. 79 Am Jur 2d, Wills, § 810. The language of the preamble clearly expressed the desire of Dr. Torres and his wife to enter into an agreement to execute a joint will.

- - - - - - - - - -

[3]Quoted in page three of this opinion.

245

The general rule seems to be that a joint and mutual will executed pursuant to an agreement is both contractual and testamentary and becomes an irrevocable obligation on the part of the surviving testator upon the death of the other party testate under a will which is in accord with the terms of the agreement. Flohr v. Walker, 520 P.2d 833, 837 (Wyo. 1974); see also In re Estate of Thompson, 478 P.2d 174 (Kan. 1970 (the making of a joint will so as to render it irrevocable must be on the basis of a contractural agreement); Phinney v. Kay, 275 F.2d 776 (C.A. Tex. 1970) (once a joint will is executed and one of the parties thereto has died, survivor becomes bound as to the testamentary disposition of property owned by either party at decedent's death, barring a failure of will to cover the total of such property); Fuller v. Nelle, 55 P.2d 1248 (Cal. 1936) (testatrix who orally agreed with husband not to revoke mutual will and who upon husband's death received and accepted husband's estate could not transfer assets of the two spouses in violation of terms of agreement with her husband). There was a clear and definite agreement between Dr. Torres and Mrs. Torres, evidenced by the language in the preamble of the testamento, not to revoke or alter their testamento after the death of either one of them.

As to objectors' claim to the Chalan Kiya property which was transferred by deed by Mrs. Torres to her daughter Asuncion, there is sufficient evidence to conclude that it was not the sole and separate property of Mrs. Torres. Even assuming that it was her separate property, it cannot be transferred by deed because it was included in the testamento. Therefore the reasons discussed in part IV of this opinion are similarly applicable to the Chalan Kiya property.

246

Finally, the objectors' claim to the Garapan property is similarly unfounded because its distribution can be found in the testamento.

AFFIRMED.

DATED: ____*2nd*____ day of *December*, 1981.

_____
ALFRED LAURETA

_____
CRISTOBAL C. DUENAS

_____
HERBERT D. SOLL