No. 46,729

Arthur Merle Seal, Vesta Titterington, Zelma Adams, Lora Holden, Jackie Holden Holland, Robert D. Holland, *Appellees*, v. Cora Seal, *Appellant*.

(510 P. 2d 167)

Opinion filed May 12, 1973.

*Jay Don Reynolds*, of Shultz, Shultz, Johnson & Reynolds, Chartered, of Dodge City, argued the cause, and *Donald E. Shultz*, of the same firm, was with him on the brief for the appellant.

*John E. Fierro*, of Bernie D. Frigon, Chartered, of Dodge City, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

Foth, C.: This action was brought by remaindermen to prevent waste by a life tenant. The defendant life tenant, Cora Seal, is a widow in her mid-eighties. She has appealed from a judgment

which, among other things, appoints a "trustee" to take possession of all money found to have been derived from the sale of real estate in which she had a life estate. She does not contest the well-recognized power of a court of equity in an action for waste to appoint a receiver in a proper case to protect the rights of remaindermen. See *Kimberlin v. Hicks*, 150 Kan. 449, 94 P. 2d 335. Rather, her primary contention is that the appointment of a trustee was an abuse of the trial court's discretion, and alternatively that at least a portion of the money should have been left in her hands because she owned it outright. (Note: The parties in this case have consistently referred to a "trustee" rather than a "receiver," and we have adhered to their terminology; the function is the same.)

While this appeal was pending Cora Seal was adjudicated an incompetent person by the probate court of Pratt County, and the First National Bank of Pratt, Kansas, was appointed conservator of her estate. That institution has not participated in this appeal, but has been substituted as appellant by order of this court pursuant to K. S. A. 1972 Supp. 60-225 (*b*) and 60-217 (*c*). It is also the permanent trustee appointed by the court below in the order appealed from.

To understand the issues before us we must attempt to unravel a somewhat complicated tale of family finance and intrigue. Our task is complicated by the fact that several chapters do not appear in the record, either by omission of the parties or because the facts are not known. The story begins with a joint and mutual will which Cora executed with her late husband Arthur Seal on September 4, 1946, and a codicil the two of them executed on October 30, 1964. The dispositive paragraphs of the will were the second and third:

"SECOND: We bequeath and devise to the survivor of us all our property, real, personal and mixed, of every nature whatsoever and wheresoever situate, to use and enjoy for the natural life of said survivor; said survivor shall have complete power to sell, mortgage, lease, encumber and dispose of any or all of said property during his or her lifetime as he or she shall see fit without order of any court, executing, acknowledgeing [sic] and delivering any and all instruments of writing necessary to properly carry out the said power of disposal.

"THIRD: At the death of the survivor of us, we bequeath and devise any and all property remaining not disposed of as set out above, except as is hereafter limited and controverted, to the following children as is hereafter set out, to-wit:

"One-half (½) of all property to Arthur Merle Seal, and one-eighth (⅛) each to Vesta Titerington, Zelma Adams, Ira Turner, and Lora Holden."

We are told that of these remaindermen, Arthur Merle Seal is the only child of Arthur and Cora jointly, while the others are Cora's children by a prior marriage. (Arthur and Cora were married for 46 years.) By the 1964 codicil the third paragraph was amended to provide:

"THIRD: At the death of the survivor of us, we bequeath and devise any and all property remaining not disposed of as set out above, except as is hereafter limited and controverted, to the following children as is hereafter set out, to-wit:

"One-half (½) of all property to Arthur Merle Seal, and one-eighth each to Vesta Titerington, Zelma Adams, and Lora Holden, and one-sixteenth each to Jackie Holden Holland and Robert D. Holland."

The amendment, it may be seen, deleted Ira Turner as a remainderman and gave his share to Jackie Holden Holland and Robert D. Holland. We assume that Jackie is the daughter of Lora Holden, and that Robert is her husband. No motive appears or is suggested for this substitution of beneficiaries, but Ira's deletion from the well strongly influenced the ensuing events.

Arthur Seal died on December 17, 1964, and the joint and mutual will and codicil were duly admitted to probate by the probate court of Gray County. Cora was appointed executrix in accordance with the terms of the will, and at her request her daughter Zelma T. Adams was appointed to serve with her as administratrix with will annexed. The two of them administered the estate and final settlement was entered on January 28, 1966. As part of the final settlement there was assigned to Cora, as life tenant under the terms of the will, three quarter-sections of land in Gray County appraised at $22,000 each, and a half interest in a house and six lots in the city of Cimarron, valued at $3,500, together with all other property in the estate.

Two years later, on January 29, 1968, a petition was filed in the probate court of Gray County for the voluntary appointment of a conservator, duly signed and verified by Cora. She was 79 years of age at that time. Her petition was granted the same day, and in accordance with her request Joe D. Butcher of Cimarron was appointed her conservator. A week later he petitioned the probate court for authority, *inter alia*, to sell Cora's automobile, which she could no longer drive. This he was authorized to do, for $2,000. He was also authorized to pay $3,110 to Cora's daughter Vesta Titterington, for caring for her during all of the preceding year.

Butcher's inventory as conservator reflected that Cora had sold two of the quarter-sections for $27,200 each, and he showed the

sales contracts as assets. She also had over $16,000 in the bank. She no longer had the house and lots in Cimarron, but she did have a house in Garden City. (This inventory exemplifies the confusion of the record: It was filed February 29, 1968, yet it purports to include a real estate contract entered into in 1970. To confuse matters further, Cora's testimony indicates that she first contracted to sell all three quarter-sections, and later amended the contract to cover only two.) The conservator also asked to sell the Garden City house since Cora was no longer living there. Under court supervision it was sold for $10,000 and the household furniture for $450. The latter was purchased by Cora's daughter, Vesta Titterington, and a showing was made by the conservator that the price was the best obtainable with due diligence and exceeded three-fourths of its appraised value.

It appears that sometime during these first months of 1968 Cora found herself in a nursing home and became unhappy. She later testified that her son, Ira Turner, hired as her attorney the late Fred Hall, then practicing in Dodge City. He filed a petition on her behalf for the termination of the conservatorship. This was duly allowed, and Butcher filed his accounting. Hearing thereon was continued and he was finally discharged as conservator on July 1, 1968. He delivered to Cora $10,227 in bank deposits and cash, and certificates of deposit totalling $36,000.

On the same day that Butcher was discharged as conservator this action was commenced by all the remaindermen named in the codicil. This group, it will be recalled, excluded Cora's son Ira Turner. The petition alleged the terms of the will, and that Cora had given Ira a $5,000 bank money order without consideration. This, it was alleged, contravened the terms of the will and constituted waste. Plaintiffs prayed for the appointment of a trustee to take charge of the personalty (which by that time constituted the bulk of the estate) and that Cora be enjoined from further waste. A temporary restraining order was issued the same day, issued by the probate judge in the absence of the district judge, enjoining Cora "from making any gifts or disposing of said properties contrary to the best interest of the remaindermen, which said would constitute waste."

Six months went by before, on January 2, 1969, the district court appointed the same Joe D. Butcher who had been Cora's conservator to serve as "temporary trustee." He was directed to take possession of "all monies, bank deposits and/or certificates of deposit

in the possession of the defendant, Cora Seal," and to hold them until further order of the court. His account later showed that over the next two years he came into possession of two certificates of deposit, a savings account and a checking account, totalling in all $31,787.90. More than half of this was not received by him until his service as temporary trustee was nearly over. The order appointing Butcher as temporary trustee was approved by Fred Hall as Cora's attorney.

Nothing more happened in this suit, so far as the record reflects, for another year and one-half. Then, it appears, plaintiffs got wind of the fact that Cora had sold another quarter section of land. They moved for, and on July 1, 1970, secured, an order requiring her to reveal the nature of the contract of sale and requiring the tenant-purchaser to pay all "rents and/or profits" due Cora to the trustee.

This move on plaintiffs' part stirred Cora, or at least Ira Turner, into long overdue action. A week later (and two years after the petition was filed) she filed an answer through the attorneys who have since represented her in this action. The answer denied the execution of the joint and mutual will and codicil, denied that the $5,000 given to Ira Turner was without consideration or in contravention of the terms of the will, denied committing waste, and denied that a trustee should have been appointed. She prayed that the temporary trustee's appointment be terminated, that she be given control of all assets of the estate, and for attorney fees.

To secure the services of her new counsel she executed a note for $5,000 secured by a mortgage on the sole remaining quarter section.

Three months later, on October 15, 1970, the trustee was ordered to pay Cora $2,000, upon her surrender of two certificates of deposit totaling $17,800. The exchange was made, with the $2,000 being paid through Cora's new attorney. The trustee was also ordered to pay her $300 per month for living expenses.

Finally, on February 18, 1971, the case was tried to the court. Cora testified that she gave Ira Turner the $5,000 in return for services rendered over a period of years; Ira said he didn't know what it was for, never talked to her about it, and was surprised to get it. Cora also testified that she had bought a new pickup truck—which she titled jointly with Ira, she said, for the purpose of securing insurance. She also at first denied and later admitted that some $10,000 worth of her late husband's bonds were unaccounted for. (Robert D. Holland testified that he saw $13,000 worth in her possession in 1965, which never again showed up.)

At the conclusion of the trial the court took the matter under advisement, ordered an accounting by the temporary trustee, and ordered him to pay Cora an additional lump sum of $1,500.

On April 2, 1971, the trial court issued its first memorandum opinion, finding in part:

"That it has been conceded by the parties that the remainder clause of the joint and contractual will of Arthur Seal, deceased, and defendant, Cora Seal, extends to the proceeds of sale of real estate covered by said will."

The court found that the funds in the hands of the temporary trustee represented the proceeds of the sale of real estate, and should be permanently protected. It concluded by asking for all parties' suggestions as to a permanent trustee.

In a supplemental memorandum dated June 11, 1971, further findings were made:

"The Court finds that *no question was raised by Cora Seal or her counsel prior to trial or at the trial* of this case as to funds represented in the temporary trustee's accounting as

| | |
|---|---:|
| Certificate of Deposit No. 4789 | $15,000.00 |
| Certificate of Deposit No. 4631 | 2,800.00 |
| Savings Account | 12,922.58 |
| Checking Account | 1,065.32 |
| | $31,787.90 |

*as being a part of the funds derived from the sale of land in question*: and that *in the absence of accounting by said Cora Seal for the appro. total sum of $57,000.00 which was the consideration for the land sold from the estate,* the Court is justified in declaring *the amount now retained* by the temporary trustee less the indicated income and authorized and/or approved expenditures and distributions *to be proceeds of said sale* and subject to control of a permanent trust, to be preserved from waste.

"The Court finds that defendant, Cora Seal, is 82 years of age, and is living with her son, Ira Turner, and appears to be unduly under the influence of said Ira Turner; that said Cora Seal purchased a pickup truck and placed the title in the name of Ira Turner, her son; that unless a permanent trustee is appointed to preserve the balance of the remaining proceeds of said sale in the hands of a temporary trustee for the benefit of the defendant, Cora Seal, and the remaindermen named in the joint will, that the same would most probably be unnecessarily dissipated.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"The Court finds that as to the proceeds of land already sold that an injunction would be impractical and virtually unenforcible; however, injuntion [sic] should issue as to sale of the land remaining in the estate *without provision for the trustee to collect and preserve the proceeds in accordance herewith.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"That First National Bank in Pratt, Kansas, is a proper (person/institution) to serve as permanent trustee to receive, hold and preserve the above amount

as the remaining funds from sale of the land in the Cora Seal and Arthur Seal (deceased) estate, and to collect and preserve the proceeds of any further sales of the land remaining in said estate.

"That Cora Seal is enjoined from sale of any of the remaining land in said estate *without providing for and causing the proceeds of sale to be deposited to the control of said trustee.*

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"That to assure that Cora Seal will have adequate funds available for her use without resort to further court order it is specifically set forth herein that the trustee shall pay over to her out of the funds held by said trustee the sum of $300.00 on or about the 10th of each month.

"That said trustee shall pay over to said Cora Seal on receipt of funds from the temporary trustee $820, interest; $97.25 wheat pasture, and $315 interest, and any and all income, rents and interest shown on the temporary trustee's accounting.

"*The Court does not presume to control the rents, royalties or other income from the land or funds, and the permanent trustee is directed to pay any interest or dividends received from the trust funds directly to Cora Seal on receipt thereof.*" (Emphasis added.)

It is from this order that Cora appealed. In examining her contentions two basic principles should be borne in mind:

First: Under a joint, mutual and contractual will such as we have here, the survivor's right of disposition does not include the right to give property away without consideration. *In re Estate of Tompkins,* 195 Kan. 467, 407 P. 2d 545; *In re Estate of Buckner,* 186 Kan. 176, 348 P. 2d 818. There can be little doubt that this will is contractual. See *In re Estate of Chronister,* 203 Kan 366, 454 P. 2d 438. Cora does not contend otherwise.

Second: This contractual limitation on the survivor's right of disposition extends to all property in his hands, regardless of whether it came to him under the will or is in his own name at the time of the other's death. See *Eikmeier v. Eikmeier,* 174 Kan. 71, 254 P. 2d 236; *Berry v. Berry,* 168 Kan. 253, 212 P. 2d 283; and *National Life Ins. Co. v. Watson,* 141 Kan. 903, 44 P. 2d 269. And cf., *Klooz, Administrator v. Cox,* 209 Kan. 347, 496 P. 2d 1350; *In re Estate of Wade,* 202 Kan. 380, 449 P. 2d 488. Cora's contention that at least some of the money in question should be hers to dispose of free of the trust flies in the face of this principle.

In examining Cora's contention that the trial court abused its discretion in appointing a trustee, we find that she does not seriously contend that she was not dissipating the estate at a rather alarming rate. During her brief periods of control the $10-13,000 in bonds disappeared, as well as at least $26,000 from the proceeds of the

real estate sales. Instead, her argument against the appointment of a trustee is based solely on her assertion that these plaintiffs are not entitled to equitable relief because they came into court with unclean hands.

The dirty deeds with which she charges them are: having a voluntary conservator appointed, allegedly without her knowledge; having the conservator sell her house and furnishings in Garden City; spiriting her off to a nursing home; and instituting this proceeding during which the temporary trustee failed to make provision for her sustenance from the time of his appointment on January 2, 1968, until the order herein of October 15, 1970. The record does not show that these matters were ever presented to or considered by the trial court. We can only infer that, by granting relief, the trial court found such defenses as were urged to be without merit. The probate court record in the voluntary conservatorship showed her verified petition, and the journal entry recited her personal appearance at the time the conservator was appointed. The district court was, to say the least, not required to disregard this record merely on the basis of her uncorroborated testimony that she knew nothing about those proceedings. Nor can we say that the institution of this proceeding showed any motivation contrary to Cora's best interest. It sought the same results that would have been achieved through involuntary conservatorship proceedings, without any stigma which might be thought to attach to her adjudication as an "incapacitated person." We are unable to say that the judicially approved acts of the plaintiffs gave them unclean hands. That status is acquired by "willful conduct which is fraudulent, illegal or unconscionable." (30 C. J. S., *Equity,* § 95*a*.) "Hands do not become unclean . . . while exercising lawful authority and power, and ill will existing between the parties to the suit, particularly where there is probable cause for bringing the suit, does not constitute inequitable conduct." (*Ibid.,* p. 1021.) Even if we were able to perceive ill will on the part of plaintiffs towards Cora, there was ample cause for bringing the suit. There was therefore no error in granting plaintiffs equitable relief.

Assuming the trusteeship is proper, Cora says she nevertheless should have set aside to her as her own property, free of the trusteeship and judicial control, funds representing her widow's statutory allowance and the proceeds of the sale of her car, house and furnishings. (These are items 2 through 5 in her statement of points relied on.) She is wrong for two reasons: First, the trial

court found from sufficient evidence that the $31,787.90 in the hands of the temporary trustee at the time of trial represented the remainder of the $57,000 proceeds from the real estate sold from Arthur's estate. Hence, the items she now claims were no longer available or identifiable—the money had long since been spent. Second, even if the money were still available, her interest in it under her contract with Arthur was no more than a life estate with a limited power of disposition, under the authorities noted above. It would still be subject to equitable judicial control on the showing made here.

Her sixth point is that during the six months of voluntary conservatorship the conservator collected her social security benefits and certain other items which should now be set over to her free from the trust. The record is silent on these specific items; it merely shows that prior to his discharge as conservator Butcher paid over to Cora all money in his hands. There is likewise no way to identify these items as part of the money in the hands of the trustee, all of which was found below to have come from the sale of real estate. The order appealed from gives Cora all income items on hand, and specifically eschews any intent "to control the rents, royalties or other income from the land or funds." All future income was to go to Cora. We are unable to perceive error in this respect.

Finally, Cora states that the court was unduly restrictive in its allowance for her living expenses. The order was to pay her some $1,232.25 income on hand, all future income, plus $300 per month from the principal. She was receiving, in addition, social security in an undetermined amount plus the income from the remaining quarter-section. There was no evidence of her needs. Under these circumstances we cannot find an abuse of the trial court's discretion.

In her brief she raises a question concerning attorney's fees. There is no appeal from any such order, nor any mention of it in her statement of points. The question is therefore not before us. *Fairlawn Plaza Development, Inc., v. Fleming Co., Inc.,* 210 Kan. 459, 502 P. 2d 663, Syl. ¶ 4; *Shinkle v. State Highway Commission,* 202 Kan. 311, 448 P. 2d 12, Syl. ¶ 3.

Before concluding, we pause to observe the effect of the proceedings in the probate court of Pratt County, referred to above, which resulted in the adjudication of Cora to be an incapacitated person. The petition in that case was filed by Ira Turner, who was represented by the same law firm that has represented Cora in this case. It sought to have Ira appointed as both conservator and guardian

for Cora. The order actually entered on Ira's petition, as previously noted, made the First National Bank of Pratt her conservator, so that as matters now stand that institution is both the permanent trustee in this proceeding, and also conservator of Cora's estate. It is readily apparent that if Cora were to be successful in this appeal in freeing any funds from the bank's hands as trustee, it would be required to pay them to itself as her conservator. No matter in which capacity the bank holds the money its duty is the same, *i. e.*, to preserve the principal and to expend the income and so much of the principal as may be necessary for Cora's care, support and maintenance—subject in either case to judicial review and control. Since the trust may well have outlived its usefulness in preserving Cora's assets this whole proceeding may well be moot. However, we do not now decide this question but leave it for the trial court to determine if and when application is made to it to terminate the trusteeship.

The judgment is affirmed.

APPROVED BY THE COURT.