No. 48,767

LLOYD THEIMER and HOWARD THEIMER, *Appellants,* v. HELEN CRAWFORD and ROBERT CRAWFORD, *Appellees.*

(582 P.2d 1151)

Opinion filed August 29, 1978.

*Douglas C. Spencer,* of Spencer & Spencer, P.A., of Oakley, argued the cause, and *James A. Spencer,* also of Oakley, was with him on the brief for the appellants.

*Thomas C. Boone,* of Hays, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

MILLER, J.: This is a review of a decision of the Court of Appeals contained in an unpublished opinion which affirmed in part and reversed in part the judgment of the Thomas district court. The issue before us is the validity of a number of *inter vivos* transfers of real and personal property by the survivor of a joint, mutual and contractual will.

P. A. Theimer and his wife, Lillian Theimer, executed the will on April 4, 1961. P. A. Theimer died in 1961, and the will was admitted to probate as his last will and testament. The pertinent portions of the will are these:

"SECOND: We, and each of us, give and bequeath to which ever one of us is the survivor all of the personal property of which either of us may die possessed to be the sole and separate property of the survivor of us absolutely and forever.

"THIRD: We, and each of us, hereby give and devise to the survivor of us all of

the real estate, wheresoever situated, of which either of us may die possessed, to be the sole and separate property of the survivor of us for his or her use and benefit for as long as he or she may live, hereby granting unto the survivor of us the full and absolute power and authority to sell, mortgage, exchange, transfer, lease for oil and gas mining purposes and for any other purpose without restriction as to term, give away, convey and otherwise dispose of and deal with the same, and the proceeds therefrom, and the entire title thereto, as he or she may desire, in all respects and in every manner as fully and completely as if the absolute owner in fee thereof; and upon the death of the survivor of us, we and each of us give and devise all that may then remain of such real property to our nephews, Lloyd Theimer of Colby, Thomas County, Kansas, and Howard Theimer of Wichita, Kansas, and to the survivor of them in trust for the purposes and upon the terms and conditions of trust set forth in paragraph 'Fourth' hereof.

"FOURTH: Upon the death of which ever one of us is the survivor and after the payment of just debts, taxes and expenses incident to the administration of the survivor's estate, we, and each of us, give, devise and bequeath all of the rest, residue and remainder of the property of which ever one of us is the survivor, whether real, personal or mixed, and wheresoever situated, to our nephews, Lloyd Theimer of Colby, Thomas County, Kansas, and Howard Theimer of Wichita, Kansas, and to the survivor of them, in trust, however, to hold and administer the same upon the terms and conditions of trust hereinafter set forth:

"(a) Said trustees, and the survivor of them, shall hold, use, manage and control the trust estate for the benefit of our said granddaughters, Patricia Joline Voisin who was born November 25, 1953, Karla Michele Voisin who was born May 6, 1955, and Vanita Louise Voisin who was born May 26, 1956. . . ."

Upon final settlement of the P. A. Theimer estate, all of his property was awarded to Lillian. Thereafter, and during her lifetime, she made the gifts here challenged. Lillian executed and delivered a warranty deed on January 18, 1974, conveying to Helen Crawford certain real estate which Lillian had acquired through the estate of P. A. Theimer. On the same day, Lillian established a joint checking account in the Thomas County National Bank with Helen Crawford; there was a balance of over ten thousand dollars in the account when Lillian died.

Lillian wrote and delivered a check for $25,000 to Helen Crawford on January 23, 1974. On the next day, Lillian caused to be transferred to herself as trustee for Helen Crawford, 1554.562 shares of Investors Mutual, Inc. And on February 6, 1974, Lillian caused certain Series E bonds, previously registered in the names of P. A. and Lillian Theimer as joint owners, to be reissued to Lillian Theimer, payable on her death to Helen Crawford. The real estate, checking account, gift of cash by check, Investors Mutual shares, and Series E bonds constituted over 80% of the value of Lillian Theimer's holdings. Lillian died on April 13,

1974, and the joint will was admitted to probate as her last will and testament.

The trial court found that the transfer of real estate, the $25,000 gift by check, and the creation of the joint checking account were valid *inter vivos* gifts; from that order the trustees appealed. The trial court also found that the transfers of Investors Mutual shares and Series E bonds were testamentary in nature and violated Lillian's contractual obligations under the will. There was no appeal from that determination.

Finally, the trial court found that Lillian Theimer was fully competent at the time the challenged transfers were made; that Lillian had independent advice from counsel; that she knew what she was doing; and that there was no undue influence. Those rulings are not challenged on appeal.

A divided panel of the Court of Appeals held that the gift of real estate was valid, since Lillian was specifically authorized to make gifts of real estate by the third paragraph of the will, and it affirmed the trial court's holding that the conveyance of real estate by deed was a valid *inter vivos* gift. It reversed the trial court, however, as to the $25,000 gift by check and as to the joint checking account, and held that these gifts, made for the purpose of defeating Lillian's obligation under the contractual will, were not authorized by paragraph 2, and were contrary to our repeated holding that the survivor's power to dispose of property does not include an unrestricted right to make gratuitous transfers of property to the detriment of remaindermen. *Seal v. Seal,* 212 Kan. 55, 510 P.2d 167 (1973); *Klooz, Administrator v. Cox,* 209 Kan. 347, 496 P.2d 1350 (1972); *In re Estate of Tompkins,* 195 Kan. 467, 407 P.2d 545 (1965); *Parsons v. Smith, Trustee,* 190 Kan. 569, 376 P.2d 899 (1962); *In re Estate of Jones,* 189 Kan. 34, 366 P.2d 792 (1961); *In re Estate of Buckner,* 186 Kan. 176, 348 P.2d 818 (1960).

We have no quarrel with the rule or with its application to the facts in those cases. In *Seal,* the survivor was given power, under the terms of the will, "to sell, mortgage, lease, encumber and dispose of" certain property. We held that the survivor's right to dispose of property did not include the right to dispose of property without consideration, under the terms of the joint, mutual and contractual will. In *Klooz* and in *Tompkins,* we held that the phrase "with right of disposal" did not authorize the

survivor to make substantial gifts, in contravention of the basic purposes of the contractual wills there involved.

In *Parsons* and in *Jones,* we held that a qualified power of disposition for the survivor's personal use or for necessities did not authorize the making of substantial transfers without consideration. And in *Buckner,* we found the will to be uncertain and ambiguous, and after applying the usual rules of construction, we held that the grant to the survivor of the privilege of "selling, mortgaging and disposing" of property did not authorize the survivor to make gifts and thus thwart the primary and central purpose of the contractual will.

None of the wills examined in those cases, however, authorizes the survivor to *give property away,* as does the Theimer will. Our research has disclosed no similar provision in joint, mutual and contractual wills coming before this court. In each of the cited cases, the language of the will was held to be ambiguous, and thus subject to judicial interpretation. As we observed in *Giese v. Smith,* 195 Kan. 607, 408 P.2d 687 (1965), however:

"Previous judicial decisions may give us rules for construction, but in construing a will each case must be governed by its own particular facts and circumstances; little aid can be derived from other judicial decisions and opinions unless the words of the two wills are substantially identical." (p. 610.)

Our first duty, when the meaning of the language in a will is challenged, is to determine whether the will is ambiguous. *In re Estate of Ricklefs,* 211 Kan. 713, 716, 508 P.2d 866 (1973) and cases therein cited.

In *Parsons v. Smith, Trustee,* supra, we said:

"The rule of this jurisdiction is that when the language used in the making of a will is clear and unambiguous a construction of that instrument is unnecessary and it must be enforced in accord with its terms and provisions. . . . [W]here a court, either trial or appellate, is called upon to determine the import to be given the terms of a will its first duty is to survey the instrument in its entirety and ascertain if there is occasion for employing rules of judicial construction in determining its force and effect." (p. 572.)

Similarly, in *In re Estate of Jones,* supra, we said:

". . . [T]his will is clear, definite, and unambiguous and we need, therefore, not go into other rules of construction to determine the intention of the testators. . . ." (p. 39.)

Justice Fontron set forth the rule for determining whether a will is ambiguous in *In re Estate of Chronister,* 203 Kan. 366, 454 P.2d 438 (1969), saying:

". . . [T]he critical test is whether the intention of the testator, or testators as the case may be, can be gathered from the four corners of the instrument itself. If the testamentary intention can be gathered from the face of the will, ambiguity does not exist; otherwise it does. . . ." (p. 374.)

We now turn to the will before us. The second paragraph bequeaths all of the personal property to the survivor as such person's "sole and separate property . . . absolutely and forever." The following paragraph devises to the survivor a life estate in the real estate—with power to sell, mortgage, exchange, transfer, or lease the land or the proceeds therefrom—*or to give it away!* The fourth paragraph disposes of the property remaining in the hands of the survivor, upon the survivor's death.

Viewing the instrument as a whole, it is clear that the survivor was not restricted, during her lifetime, from disposing of either personal or real property, even by gift. The parties did not contract with each other to *retain* all personal and real property passing from the first decedent to the survivor. They contracted only that the property owned by the survivor at the time of death would pass according to the fourth paragraph of the will.

We hold that the will is not ambiguous; that the survivor, Lillian Theimer, was free to make gifts of either personal or real property during her lifetime; and that the gifts of real property, and of cash both by check and by the creation of a joint checking account, constituted valid *inter vivos* gifts.

The unpublished opinion of the Court of Appeals is affirmed insofar as it held the gift of realty valid; and it is reversed insofar as it held the gifts of personal property invalid. The order of the trial court is affirmed.