No. 49,549

In the Matter of the Estate of H.S.B. Miller, Deceased. KENNETH CROMWELL, *Plaintiff-Appellant,* v. JOAN C. SCHAAF, Administrator C.T.A., *Defendant-Appellee.*

(594 P.2d 167)

Opinion filed May 5, 1979.

*Philip C. Lacey,* of Lehmberg, Bremyer, Wise, and Hopp, of McPherson, argued the cause and was on the brief for the appellant.

*Philip E. Winter,* of Morton and Winter, of Emporia, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This case involves a claim made by a remainderman against the estate of a life tenant in which the remainderman seeks an accounting and delivery of assets. Simply stated, the basic question presented is this: When a life tenant with a power of disposition commingles funds of the estate with his own funds and thereafter the commingled funds are partially expended, is there a presumption that the life tenant first expended his own funds or first expended those funds received by him as a life tenant?

The facts in the case are not in dispute and were stipulated by the parties to be as follows: H.S.B. (Bert) Miller and Hilda C. Miller were husband and wife. Each of them had been married before and had children by the previous marriage. Hilda died on April 29, 1970. Her will was admitted to probate on August 21, 1970. It provided in part as follows:

"SECOND. I give, bequeath and devise to my husband, Bert Miller, Hunter, Kansas, all of my property, real, personal or mixed, wherever the same may be located, for his use and enjoyment for and during his life and I do hereby direct that he shall have the right and power of disposition thereof, and I further direct

that any balance that may be remaining at his death, shall be distributed in accord with the provisions of Paragraph THIRD hereof.

"THIRD. In the event that my husband, Bert Miller, shall predecease me, or as contemplated in Paragraph SECOND, above, it is my will and desire, and I do hereby give, bequeath and devise, together with my love and affection, an equal and one-third part and interest in and to my property above indicated, to my children, to-wit:

Mrs. Eleanor Bates

. . . .

Mrs. Doris Boynton

. . . .

Kenneth Cromwell

. . . .

share and share alike."

The journal entry of final settlement in Hilda's estate was filed on September 3, 1971, and showed a cash balance of $8,056.29, to be distributed under the will to Bert Miller as life tenant with a power of disposition, and any part remaining after his death to go to Hilda's three children as remaindermen at the death of Bert Miller. On the same date, R. E. Miller, attorney for the executor and son of the decedent, Bert Miller, wrote a joint letter to each of the three remaindermen enclosing a check in the amount of $1,000. The letter enclosing the checks provided in part as follows:

"To-day Mom's estate was closed in Lincoln, Kansas. I have heretofore sent each of you a copy of the Will so that all persons would know her wishes, and Dad has told me that it was his wish, after considerations of his own, that a part of Mom's money be paid to each of you at this time.

"Included in the estate was half of a joint savings account in which Dad was the survivor. It was his direction that this be included in Mom's estate from the beginning, and I consider this to be his right so to do.

"After the payment of the expenses involved there was a balance of $8,056.29, after this partial distribution of $1,000.00 to each of you, there will be $5,056.29, which Dad will have in his possession, subject to the terms and uses expressed in the will. In the remaining sum, of course you will each have a one-third remainderman interest, *subject to Dad's needs."* (Emphasis supplied.)

The subsequent handling of the remaining $5,056.29 is important and will be discussed in some detail. On October 1, 1971, Bert Miller deposited the remaining $5,056.29 to his then-existing personal checking account, which at the time of the deposit had a balance of $129.33. On January 25, 1972, Bert Miller transferred $4,000 from the checking account to his personal savings account. The checking account balance after the withdrawal was

$1,322.40. Thereafter, the remaining checking account funds were expended by Bert, apparently to pay his living expenses, and were exhausted by August 14, 1972. The savings account to which the $4,000 was transferred had a balance prior to the transfer of $6,342.26. After the transfer, the savings account balance totaled $10,342.26. From the time of the transfer until the time of Bert Miller's death on July 14, 1975, Bert Miller made the following withdrawals: $1,000 on July 23, 1973; $1,000 on November 29, 1973; $2,000 on January 2, 1975; and $2,000 on July 7, 1975. The parties agree that these withdrawals were to pay Bert's living expenses during the period from January 25, 1972, when the $4,000 deposit was made until Bert's death. The only additions to the accounts were credits for interest and a deposit by Bert in the amount of $798.88 on March 8, 1974. At the time of Bert's death the balance in the savings account was $6,690.51.

After the death of Bert Miller, Kenneth Cromwell, one of the three remaindermen under Hilda's will, filed a petition for an allowance of claim against the estate of Bert Miller. In the petition, Cromwell in substance requested that the administrator C.T.A. of Bert's estate be required to make an accounting to the remaindermen and further requested that any proceeds of the Hilda Miller estate remaining in the savings account of Bert Miller at the time of his death be divided equally among the three remaindermen of Hilda's estate in accordance with her will. In response to the petition for allowance of claim, the administrator C.T.A. filed an answer denying the claim and alleging that the petitioner had all necessary information concerning the funds and that all of the funds coming from the estate of Hilda C. Miller had been distributed to the petitioner and his sisters and used by H.S.B. Miller during his lifetime pursuant to her will. The administrator C.T.A. prayed that the claim be denied.

Thereafter, the claim came on for hearing before associate district judge, Darrell D. Meyer, in Lyon County. The case was submitted by the parties on a stipulation that included various documents including the will of Hilda C. Miller, the letter of R. E. Miller dated September 3, 1971, and several bank statements showing the deposits and withdrawals mentioned above. There was no oral testimony presented by either party. After considering the stipulated evidence and the arguments and briefs of counsel, the district court ruled that the funds expended by

Bert Miller prior to his death were those funds held by him as life tenant under Hilda C. Miller's will and that they had been spent in their entirety. The court based its decision upon the rationale that Bert Miller was a person of normal intelligence and financial astuteness who had access to legal and financial advice during his lifetime. Taking those factors into consideration, the trial court concluded that there should be a presumption that Bert Miller, having a source of funds available that were to be "for his use and enjoyment for and during his life," would make use of those funds prior to using his personal funds. The trial court then held in favor of the estate by denying the claim of Kenneth Cromwell, finding that the funds expended by Bert Miller from his savings account during his lifetime were those funds left to him by Hilda C. Miller in her will. The court ruled that any funds left in Bert's savings account at the time of his death belonged to his estate. The remainderman appealed to this court.

On the appeal, the remainderman takes the position that a life tenant who receives money for use during his life with a power of disposition is in the position of a trustee or quasi trustee. Where the life tenant, as a quasi trustee, commingles such funds with his own personal funds, there should be a presumption that the life tenant expends his own funds first out of the joint account since he owes a fiduciary obligation to the remainderman. The position of the administrator C.T.A. of the life tenant, simply stated, is this: The life tenant had the right to use and expend the funds under the power of disposition granted him in the will. The life tenant had the right to commingle the estate funds with his own and, because of innate human avarice, the presumption should be that the life tenant intended to expend his nonpersonal funds before expending his own funds. The issue presented is one of first impression in this state. It is also an issue on which there are differences of opinion among the various appellate courts that have had occasion to consider and determine the issue.

At the outset, it would be helpful to consider some of the general principles of law pertaining to the rights and obligations of life tenants who hold property for life with a power of disposition during lifetime:

(1) A life tenant, with power to sell or dispose of property devised to him for life with remainder to designated persons, is a trustee or quasi trustee and occupies a fiduciary relation to the

remainderman. In the exercise of that power, the life tenant owes to the remaindermen the highest duty to act honorably and in good faith. A quasi trustee has been defined as a person who reaps a benefit from a breach of trust, and so becomes answerable as a trustee. 89 C.J.S., Trusts § 3, p. 716; Black's Law Dictionary 1684 (4th ed. rev. 1968); *In re Estate of Lehner,* 219 Kan. 100, 547 P.2d 365 (1976); *Noel v. Noel,* 212 Kan. 583, 512 P.2d 324 (1973); *Stump v. Flint,* 195 Kan. 2, 402 P.2d 794 (1965); *Windscheffel v. Wright,* 187 Kan. 678, 360 P.2d 178 (1961).

(2) A life tenant, who by will is given the power to invade and consume the corpus, is subject only to the restrictions that he may not give the property away, devise it by will, or sell it for less than adequate consideration. *In re Estate of Lehner.*

(3) If trust funds have been commingled with other funds, the person equitably entitled thereto may follow the funds and is entitled to have the trust funds reclaimed and taken out of the assets with which they are commingled. *Secrest v. Ladd, Receiver,* 112 Kan. 23, 209 Pac. 824 (1922); *Peak v. Ellicott, Assignee,* 30 Kan. 156, 1 Pac. 499 (1883).

(4) As a general rule, where a trustee has commingled trust funds with his own, and subsequently withdraws sums from the common mass for his own use, the cestui que trust is entitled to recover to the extent of the trust fund the lowest balance to which the mass has been depleted, for the reason that the trustee is presumed to have taken his own funds first. 90 C.J.S., Trusts § 438c, p. 845, citing many cases in support of the legal principle.

In applying these general principles pertaining to trustees to the facts presented in this case, our problem is complicated by the fact that there is very little authority which defines obligations of a life tenant as a quasi trustee, where the life tenant has been given a broad authority to expend estate funds during his lifetime. As noted above, even though the life tenant has a broad power of disposition, he still owes a fiduciary duty to the remaindermen.

Courts in several jurisdictions have taken different approaches to the problem. In *Hutchinson's Estate v. Arnt, Admx.,* 210 Ind. 509, 1 N.E.2d 585, *rehearing denied* 4 N.E.2d 202 (1936), the testator's widow was granted by her husband's will a life estate in certain real and personal property with a full power of disposal. At the time of her husband's death, the life tenant had substantial

assets of her own. During the twenty-five year period between his death and her death, the assets of the life estate became commingled with the life tenant's personal assets. At the time of the life tenant's death, the court sought to sort out the extent of the remaining personal and life estates. The court concluded that there should be a presumption that the commingled funds were expended, first, out of the income of the estate until it was exhausted; second, out of the life tenant's own funds until those funds were exhausted; and finally, out of the corpus of the estate funds held by the life tenant.

In the case of *In re Barnes' Estate,* 108 N.E.2d 88 (1950), *aff'd* 108 N.E.2d 101 (Ohio App. 1952), the court considered a fact situation similar to that found in *Hutchinson's Estate.* In imposing a trust, the Ohio court quoted the language of the Hutchinson opinion to insure that certain treasury bonds which had become commingled with other funds would be distributed to the heirs of the deceased's husband.

*Murphy v. Slaton,* 154 Tex. 35, 273 S.W.2d 588 (1954), involved a fact situation where a life tenant with a power to invade the corpus for living purposes commingled estate funds with her own personal assets. Between her husband's death in 1928 and her death in 1951, the life tenant so thoroughly commingled her own assets with the proceeds from the sale of the life estate property that it was difficult to determine at her death which property was hers and which property belonged to the remaindermen. In dealing with the confusion caused by the commingling, the court created a rebuttable presumption that the property subject to the remainder interest was spent last. The presumption could be rebutted as to any life estate property specifically shown to have been consumed by the life tenant.

In *Robb, Exec. v. Berryman,* 215 Md. 161, 137 A.2d 135 (1957), a life tenant with a power to invade the corpus commingled her personal funds with the proceeds of the sale of real estate subject to a remainder interest. In light of the impossible task of determining the source of the spent funds, the Maryland court ruled that where the combined total of personal and corpus assets at the death of the life tenant amounted to less than the original corpus, only those funds specifically identified as the life tenant's personal property could be retained by her personal executor. *Robb*

is cited in 51 Am.Jur.2d, Life Tenants and Remaindermen § 281, p. 572.

Our research has disclosed two cases where a contrary result has been reached on the issue. *Richey's Estate*, 251 Pa. 324, 96 A. 748 (1916), involved a factual situation where a testator devised a life interest in property to his wife giving her the power to consume the principal, with the remainder of the estate existing at her death to go to certain collateral relatives. The controversy in the case involved the question of whether the money expended by the life tenant during her lifetime for maintenance and support had been expended out of moneys held by the widow as life tenant or out of her own personal property. In a short opinion, the Supreme Court of Pennsylvania held that where a person has two funds to draw upon for living expenses, one her individual estate, the other an estate in which she has a life interest with the power to consume, it will be presumed, in the absence of evidence to the contrary, that she expended the estate funds before drawing on her personal funds.

The most recent case on the issue is cited in both of the briefs. In *Skovron v. Third National Bank in Nashville*, 509 S.W.2d 497 (Tenn. App. 1973), the Tennessee Court of Appeals considered the commingling of funds by a life tenant. As its first assumption, the court rationalized that, aside from assets consumed for support, the ratio of personal assets to the life estate assets would have remained approximately the same. The court next inferred that, in light of the life tenant's financial astuteness and in the absence of evidence or circumstances indicating otherwise, the finder of fact could properly find that the life tenant would use a fund provided for her rather than her own funds. The court concluded that the question was essentially one to be determined by the finder of fact. The court distinguished the *Robb* decision as limited to its specific facts. The district court in the case now before us relied primarily on *Skovron* in deciding the case in favor of the estate of the life tenant, Bert Miller.

We have concluded that we should adopt in Kansas the rule that when a life tenant with a power of disposition commingles funds from the estate with his own personal funds and thereafter the commingled funds are partially expended, the rebuttable presumption is that the life tenant first expended his own funds before expending those funds received by him as a life tenant. In

reaching this conclusion, we have given controlling weight to our cases which hold that a life tenant with a power of disposition is a quasi trustee and occupies a fiduciary relationship toward the remainderman. We are convinced that such a rule would better achieve the ends of justice in the great majority of the cases. If a life tenant with a power of disposition really intends to expend estate funds held by him as a quasi trustee before expending his own personal funds, he may easily do so by segregating the life estate funds and keeping accurate records of his expenditures. It is questionable whether Hilda intended Bert should spend her funds immediately upon receipt and before exhausting his own funds. If that had been her intention, why would Hilda have provided for a remainder interest over to her own children in the unexpended funds? Bert Miller as life tenant and quasi trustee had a fiduciary obligation to the remaindermen to carry out the intent of his deceased wife, Hilda, as expressed in her will. Although Bert Miller had the power of disposition over the funds, the presumption should be that he did not intend to expend them unless such an intention was clearly manifested by his actions during his lifetime. The judgment of the district court is reversed. The case is remanded to the district court with instructions to enter an order directing the administrator C.T.A. of H.S.B. Miller's estate to pay over to the remaindermen the sum of $4,000 with accumulated interest from the date of demand in accordance with the claim filed by Kenneth Cromwell, the plaintiff-appellant.

Judgment reversed and remanded in accordance with the views expressed in the opinion.