No. 55,670

IN THE MATTER OF THE ESTATE OF HARRY L. KREIE, DECEASED.

(679 P.2d 712)

Opinion filed March 24, 1984.

*Jack E. Dalton,* of Mangan, Dalton, Trenkle & Rebein, Chartered, of Dodge City, argued the cause, and *Michael A. Doll,* of the same firm, was with him on the briefs for appellants.

*Zackery E. Reynolds,* of Fisher, Ochs, and Heck, P.A., of Topeka, argued the cause and *J. Byron Meeks,* of Kinsley, and *David L. Patton,* of Patton & Kerbs, of Dodge City, were with him on the brief for appellees.

The opinion of the court was delivered by

HOLMES, J.: This appeal involves an ongoing controversy between a life tenant and two remaindermen, the appellees, and five of the remaindermen, the appellants, under the last will and testament of Harry L. Kreie, deceased. Two orders of the district court have been appealed. The first order authorized payment to one of the appellees for personal services rendered to the life tenant and the other denied a motion of the appellants who sought to prevent the life tenant from invading the corpus of the estate property for support purposes.

On August 26, 1970, Harry L. Kreie and Minnie Kreie, husband and wife, entered into a joint and mutual contractual will, the pertinent provisions of which provide:

"SECOND. All of our property and estate, both real and personal, whether held solely or jointly, and of whatsoever kind and wheresoever situ-

ated, . . . we each and both give, devise and bequeath to the survivor of us, for and during his natural life, for his sole use and benefit during his natural life, together with full power to use, enjoy and consume the same; and should at any time the income and proceeds from said property be insufficient for his comfortable support, then, in that event, we each and both will and direct that the said survivor may sell any such portion of any property, including real estate, and apply the proceeds to his support, and we each and both hereby authorize the survivor to execute good and sufficient deeds of conveyance to the purchasers of any such real estate.

"THIRD. Upon the demise of the survivor of us, we each and both give, devise and bequeath our property then remaining of whatsoever kind or nature and whether accumulated prior or subsequent to the making of this Joint and Contractual Last Will and Testament, to our children, to-wit: Otto Kreie, Mattie Patterson, Nela Luther, Leroy Kreie, Alma Dinkela, Irene Murphree, Barbara Beck and Jerry Lee Kreie, to take *per stirpes* and not *per capita.*"

Harry L. Kreie died May 4, 1971, survived by his widow and the nine children named in the will. Minnie Kreie, Alma Dinkela and Jerry Lee Kreie are the appellees herein and will be referred to as such throughout this opinion. Otto Kreie, Mattie Patterson, Nela Luther, Leroy Kreie and Barbara Beck are the appellants. Another son, Leonard P. Kreie, was separately named in paragraph Fourth of the will and does not appear in these proceedings. Likewise, Irene Murphree does not appear to have been an active participant in the family battles that have gone on since at least the death of Harry. The record reflects that as early as August, 1971, several of the children met in an attempt to devise a plan to assist their mother "in handling her business matters." The notes of that meeting reflect a certain lack of harmony and communication within the family and state, "The question that has been brought up is whether the terms under which the property has been passed permit sale or gift of property for purposes other than for support and well being of Mother Kreie."

The will was not admitted to probate until May 10, 1972, when Minnie Kreie was appointed executrix. Four of the appellants filed defenses to the petition for final settlement, challenging the actions of the executrix and questioning her fidelity to the terms of the will. The parties' attempt to resolve their differences delayed final settlement of Harry Kreie's estate until November 7, 1973.

The court, in the journal entry of final settlement dated November 7, 1973, made the following findings:

"That, however, the findings as to an agreed settlement between the devisees

and legatees in this estate based upon the written defenses to the Petition for Final Settlement filed herein by Otto Kreie, Nela Luther, Leroy Kreie and Barbara Beck should be approved as hereinafter set out.

. . . .

"The Court further finds that under the joint, mutual and contractual will of Harry L. Kreie, deceased, that all of the real estate and personal property included in said estate or owned by Minnie Kreie as to undivided interests and joint tenancy property hereinafter described, to-wit: [Property descriptions omitted] are all hereby assigned to Minnie Kreie for life subject to a trust being impressed thereon for the benefit of the remaindermen under the Last Will and Testament of Harry L. Kreie, deceased. That Elmer A. Wetzel of Dodge City, Kansas, should be appointed Trustee and the following described property shall be placed in trust with the said Trustee, to-wit: [Property descriptions omitted.]

"That the Trustee or his successor shall retain all of said property, which shall be a part of the trust estate unless approval for sale or transfer thereof is obtained from this Court after hearing and reasonable notice thereof to all of the remaindermen or their successors in interest and then only upon a showing that the income from said properties is insufficient for the comfortable support of the said Minnie Kreie. That the net income from all of the trust assets shall be paid monthly to Minnie Kreie; except said Trustee shall be entitled to maintain a reserve for the payment of ad valorem and all other taxes, payable and assessed upon said property, bond premium and other expenses including compensation of said Trustee. That Minnie Kreie shall not be accountable either to the Trustee or any of the remaindermen or the Court as to her use of the income distributed to her. That the Trustee shall furnish bond in the amount of $50,000.00."

The court then entered the following orders:

"IT IS BY THE COURT FURTHER ORDERED AND ADJUDGED that the title to the following described real estate and personal property remaining in this estate is hereby assigned to Minnie Kreie, for and during her natural life, with remainder over to the remaindermen herein set out, subject to the trust provisions also hereinafter set out, to-wit: [Property descriptions omitted.]

"IT IS FURTHER ORDERED AND ADJUDGED that Elmer A. Wetzel be and he is hereby appointed Trustee for the above described property assigned to Minnie Kreie, and that all net income from said trust property shall be assigned to Minnie Kreie monthly and that *Minnie Kreie not be required to account either to the Trustee, the remaindermen or to the Court concerning the use and disposition of said income.* That the investment of said trust property shall be controlled by the Probate Court in this case. That in the event it is necessary to invade the corpus of said trust, a Court order be obtained after notification to the remaindermen pursuant to the provisions of K.S.A. 59-2209, et seq., as amended, and a showing that the income from said properties is insufficient for the comfortable support of the said Minnie Kreie." (Emphasis added.)

No appeal was taken from the final orders in the Harry L. Kreie Estate and they are now the law of this case.

Things did not go smoothly for the trustee as problems persisted in the family. Objections were made by some or all of the

appellants to the trustee's execution of a farm lease, to the annual accountings and to the distribution of the bonus money received for the execution of an oil and gas lease. However, it was not until 1982 that the events leading to this appeal occurred. On April 2, 1982, Minnie Kreie suffered an accident and was hospitalized for a severe hip fracture. At the time she was 86 years old, and her release from the hospital seven weeks later was conditioned on her receiving twenty-four hour care. Minnie Kreie's daughter, Alma Dinkela, had been residing with and caring for her mother, pursuant to a written contract entered into in 1973. Upon Mrs. Kreie's return home from the hospital, Alma arranged for a licensed practical nurse to care for Minnie Kreie during the day while Alma worked. Alma then attended her mother during the evenings, nights and weekends. On June 7, 1982, Jerry Kreie moved into his mother's residence to assist Alma in caring for their mother.

Thereafter began the proceedings ultimately resulting in this appeal. On July 23, 1982, Minnie Kreie filed a motion for an order of the court authorizing the trustee to invade the corpus of the trust for funds to pay her medical expenses. Appellants filed a response, requesting strict proof of need and a showing that the income from the trust properties was insufficient for Minnie Kreie's comfortable support. At the hearing, Alma Dinkela testified on the insufficiency of income derived from the trust to provide necessary care and treatment for the life tenant. After the hearing, which was not transcribed, the trial court ordered invasion of the corpus, based on the following findings of fact:

"3. Among [Minnie Kreie's] needs are past due medical expenses as well as anticipated future medical expenses, care while in the home and other personal attention.

"4. The said Minnie Kreie has cashed checks constituted as distribution of income. And has on occasion made gifts of that cash to certain of her children who visited her to compensate them for gasoline and other things. The amounts, the donees, the dates and times and places of these gifts were not established due to the lack of recollection by Mrs. Dinkela.

"5. The insufficiency of income as compared to anticipated needs of the said Minnie Kreie leaves a shortage of available funds from income from the Trust corpus to maintain the comfortable support of the said Minnie Kreie to the extent of approximately $25,000 for the year 1982.

. . . .

"7. The said Alma Dinkela has, several years previously, been granted a power of attorney from the said Minnie Kreie and has, since her injuries, been managing her money affairs, writing checks and depositing funds to the checking account of

the said Minnie Kreie. Accordingly, the said Alma Dinkela has agreed to cooperate with the Trustee, receive distributions of corpus and fully and completely account for the use of same monthly during the balance of the year 1982 and provide copies of such monthly accountings to counsel for the parties to these proceedings."

No appeal was taken from that order.

On October 29, 1982, Minnie Kreie filed a motion requesting authorization to compensate Alma Dinkela and Jerry Kreie for services rendered in providing her with care. The appellants filed written defenses strenuously objecting to this motion, alleging that any services rendered were gratuitous, and that for other reasons the claimants were estopped from seeking compensation. Following discovery, which included the depositions of all three appellees, and a pretrial conference, the matter was heard by the court on March 29, 1983. During discovery accountants employed by the appellants reported that trust income checks issued during the period from December 30, 1978, to January 29, 1982, in the amount of $14,500 were endorsed by the life tenant and deposited in the account of Jerry Kreie, while another $40,669.40 was deposited in three accounts in which the life tenant, Minnie Kreie, had no interest.

After the hearing on March 29, 1983, the trial court found that Minnie Kreie and Alma Dinkela were parties to a 1973 contract wherein Alma agreed to move in with and care for her mother and, in the event such care became fulltime, Alma would be compensated on a reasonable basis. Fulltime care had been necessary from the date of Mrs. Kreie's return from the hospital. The court concluded that based upon the written contract Alma should receive $3.00 per hour for the 2,897 hours of care provided. Jerry Kreie's claim was treated differently by the court, which recognized that although he had assisted in his mother's care it was not pursuant to any express agreement, and he had no "reasonable and proper expectation of compensation." See *Hoyer v. Cannedy*, 4 Kan. App. 2d 228, 604 P.2d 76 (1979), and cases cited therein. The decision allowing compensation to Alma Dinkela is one of the orders appealed in this action. Jerry did not appeal the order denying him compensation.

Following the trial court's conclusions and order on the claims for compensation, appellants filed a motion pursuant to K.S.A. 60-260(b) to set aside the July 29, 1982, order authorizing invasion of the trust corpus. Appellants claimed newly discovered

evidence based upon the accountants' findings during prior discovery, and that the July, 1982, order may have been obtained by fraud, misrepresentation or other misconduct of an adverse party. As relief, appellants sought a restraining order preventing further disbursement of trust corpus proceeds, discovery orders to further ascertain the nature and extent of gifts made, an order directing charges be made against the distributive share of parties receiving these gifts, an order directing an accounting, and a determination of the existence of any breach of fiduciary duty in regard to the gifts made. At the hearing on May 25, 1983, the trial court cut through the numerous requests and side issues and went directly to the question of whether Minnie Kreie, under the terms of the will and the order of final settlement, could give away the income she received or whether she was required to conserve and preserve it for the benefit of all the remaindermen. The trial judge stated:

"I don't think I can find that she [Minnie Kreie, the life tenant] has to account under the terms of the Trust and under the terms of the Will. . . .

"I am going to find as a matter of law, under the terms of the Trust and under the terms of the Will, Minnie Kreie has no duty to account for anything. I don't have any trouble with that."

The journal entry disposing of the issues raised at this hearing reads in pertinent part:

"[T]he Court is finding as a matter of law that the said Minnie Kreie could give Trust Income away to such an extent that she might desire and in disproportionate shares among her children or other donees and that the Court, having so ruled as a matter of law, finds that such Discovery Orders are not necessary and that such ruling disposes of the Motion on its Merits.

. . . .

"[T]he said Minnie Kreie may, under the terms of the Joint Will of the said Harry L. Kreie and Minnie Kreie, and the Trust imposed pursuant to the Journal Entry of final settlement entered into on November 7, 1973, give Trust Income away to anyone she chooses despite the fact that invasion of Corpus may subsequently be necessary to provide funds for her comfortable support and that therefore because of such finding said Motion should be and the same is hereby overruled."

Appellants appeal from the orders of the trial court rendered at the May 25, 1983, hearing, and both appeals have been consolidated in this action. This case was transferred from the Court of Appeals pursuant to K.S.A. 20-3018(c).

We will first address the issue of the court allowing appellee Alma Dinkela compensation for services rendered to her mother

after the April, 1982, accident. Appellees' first argument is that the trial court erred in allowing into evidence the May, 1973, written contract between Alma and her mother. Throughout the depositions, pretrial conference, and hearing on the issue of their compensation, Alma Dinkela and Jerry Kreie appeared pro se. At neither her deposition nor the pretrial conference did Alma Dinkela disclose the existence of the contract she had entered into with her mother in May, 1973. It was not until she was being cross-examined that the existence of the written contract came to light. Appellants then objected to the admission of the contract in evidence claiming prejudice and surprise. They also sought a continuance for the purpose of responding to the new development. The court denied the motion for a continuance and allowed the contract to be admitted in evidence. A careful review of the record clearly indicates that Alma was never asked prior to cross-examination at the hearing if she had a specific contract for compensation with her mother. The contract was clearly relevant to the issue of compensation and absent an abuse of discretion by the court, there is no error in its admission. *Van Hoozer v. Farmers Insurance Exchange,* 219 Kan. 595, 613, 549 P.2d 1354 (1976); K.S.A. 60-407(*f*). We find no abuse of discretion. Appellants also contend the trial court erred in denying their request for a continuance. Again, a ruling upon a request for a continuance lies within the sound discretion of the trial court and we find no such abuse here. *Wilson v. American Fidelity Ins. Co.,* 229 Kan. 416, Syl. ¶ 4, 625 P.2d 1117 (1981).

Next appellants contend the terms of the contract do not clearly and convincingly establish Alma's claim for compensation. The contract provided, *inter alia:*

"(3) Second Party [Alma Dinkela] agrees to properly look after and care for First Party [Minnie Kreie] during the life of this agreement and during the lifetime of First Party and as long as the parties reside in [Minnie Kreie's] home. That in the event such care would necessarily become full time that then in that event Second Party shall be compensated on a reasonable basis."

The trial court's findings of fact and conclusions of law include the following:

"4. From May 24th up to and including December 31, 1982, with a few exceptions, Alma has been with her mother during the nighttime hours. Had Alma not resided in the home and been available for nighttime calls, it would have been necessary for Minnie Kreie to arrange for other care. . . .

. . . .

"2. The terms of the written agreement are clear and unequivocal. Alma has
either furnished the care herself or arranged for care, in either case, she
assured that her mother was never without care. For this, she is entitled to
reasonable compensation."

Accepting as true the evidence and all inferences therefrom which support or tend to support the findings in the trial court, and disregarding conflicting evidence or other inferences which may be drawn therefrom, we believe the trial court's conclusion this contract established a reasonable expectation of compensation on the part of Alma Dinkela is supported by substantial competent evidence, and is sufficient to support the court's conclusions of law. *Marcotte Realty & Auction, Inc. v. Schumacher,* 229 Kan. 252, Syl. ¶ 2, 624 P.2d 420 (1981); *City of Council Grove v. Ossmann,* 219 Kan. 120, Syl. ¶ 1, 546 P.2d 1399 (1976).

Finally, with respect to the compensation issue, appellants contend it was error to allow Alma Dinkela to amend the claim for services to extend it from October 26, 1982, until December 31, 1982, asserting no mention of such an amendment was made at the pretrial conference. The original motion to allow Alma compensation was filed October 29, 1982, and covered the period of time from the accident to October 26th. The matter was not heard until March, 1983, at which time appellees sought to amend the claim to extend through December 31, 1982. Over appellants' objection the court allowed the amendment and evidence of services rendered during the additional period of time. Again, the amendment of pleadings and pretrial orders lies within the broad discretion of the trial court. *Bartlett v. Heersche,* 204 Kan. 392, 402, 462 P.2d 763 (1969).

We now turn to the major issue before the court. To what extent, if any, do the provisions of the joint and mutual contractual will and the orders of final settlement in the proceedings in the estate of Harry L. Kreie restrict his widow, Minnie, in the disposal of income derived from the trust imposed by the court orders? Appellee, in a memorandum regarding this matter, stated her position as:

"It is the contention of Mrs. Kreie that she could do whatever she wanted with
the income from the trust and need not account to anyone."

In support of her position she asserts that the trust provisions of

the journal entry of final settlement are controlling. Appellants, on the other hand, say the will is controlling and seek to apply general principles of law as they relate to contractual wills to the issue at hand.

At this point, it might be helpful to consider some of the general principles of law pertaining to the rights and obligations of life tenants who hold property with a power of disposition:

(1) "A life tenant, with power to sell or dispose of property devised to him for life with remainder to designated persons, is a trustee or quasi trustee and occupies a fiduciary relation to the remaindermen. In the exercise of that power, the life tenant owes to the remaindermen the highest duty to act honorably and in good faith. A quasi trustee has been defined as a person who reaps a benefit from a breach of trust, and so becomes answerable as a trustee. [Citations omitted.]" *In re Estate of Miller,* 225 Kan. 655, 658-59, 594 P.2d 167 (1979).

(2) "A life tenant, who by will is given the power to invade and consume the corpus, is subject only to the restrictions that he may not give the property away, devise it by will, or sell it for less than adequate consideration." 225 Kan. at 659.

(3) The contractual limitations on disposition of property by the survivor extend to his or her separate property and to property originally held with the other party in joint tenancy with right of survivorship, as well as to property received under the will of the other party. *Seal v. Seal,* 212 Kan. 55, 61, 510 P.2d 167 (1973).

While these principles are simple to state, their application in any given case has proved extremely difficult. A comprehensive review of all of the Kansas cases involving disputes between a life tenant and the remaindermen leads to only one clear conclusion. Each case appears to turn upon its own particular facts and no general rules can be formulated which will apply in all factual circumstances. In the instant case we conclude that neither the will nor the journal entry, to the exclusion of the other, is solely controlling of the issues herein. Both documents must be read together in an attempt to carry out the intent of the testators and the provisions of the court's orders. In considering the 1973 court orders it must be kept in mind that, in part, they resulted from a compromise and settlement of what was apparently bitter family disagreement over the future handling of the Kreie assets.

For their contention the life tenant could not make gifts of her trust income and later request invasion of the corpus on grounds of necessity, appellants rely on the established principle that language in a will effectively granting the life tenant the "full power to the use and enjoyment" and the "power to sell and

dispose" of the residue of the estate does not authorize gratuitous transfers of such property by the survivor. *Seal v. Seal*, 212 Kan. at 61; *Klooz, Administrator v. Cox*, 209 Kan. 347, 496 P.2d 1350 (1972); *In re Estate of Tompkins*, 195 Kan. 467, 407 P.2d 545 (1965); *In re Estate of Jones*, 189 Kan. 34, 366 P.2d 792 (1961); *In re Estate of Buckner*, 186 Kan. 176, 348 P.2d 818 (1960). In those cases the property involved was property included in the estate of the first decedent. Here, we are faced with an additional step in the process. The life tenant appears to have given away income from the trust estate property which then resulted in the necessity to invade the corpus. We are faced not only with the will but also the provisions of the trust created in the settlement of the Harry L. Kreie Estate. The broad provisions of the will not only give the life tenant "full power to use, enjoy and consume" the property but also provide that if the income is insufficient for her comfortable support, then property may be sold to provide such support. Superimposed upon the contractual provisions of the will are the trust provisions of the court orders of 1973, which give Minnie Kreie the unfettered right to receive all the income from the estate (trust) property and also provide she shall "not be required to account either to the Trustee, the remaindermen or to the court concerning the use and disposition of said income." We are not faced with a situation where the will gives authority to the life tenant to dispose of property which may result in diminution of the shares to be received by remaindermen. See *Theimer v. Crawford*, 224 Kan. 586, 582 P.2d 1151 (1978); *Beall v. Hardie*, 177 Kan. 353, 279 P.2d 276 (1955); *Fourth Nat'l Bank v. First Presbyterian Church*, 134 Kan. 643, 7 P.2d 81 (1932).

Until the accident and hospitalization of Minnie Kreie in April, 1982, there was clearly more than sufficient income to properly care for Mrs. Kreie. Her disposal of excess income was permitted by the 1973 trust provisions and there is no indication that the gift of excess income was in any way designed to defeat the terms of the will which she and her husband had entered into. She was merely exercising rights given to her by the trust provisions which evidently came about by agreement among the parties. If she had not suffered her unfortunate accident and resultant disability, it is reasonable to assume that invasion of the corpus would never have been necessary. Thus, we conclude that there

is no duty for the appellees to account for the income received by Minnie Kreie prior to her injury of April, 1982.

However, once it became apparent following her injury that the income might not be sufficient for her care and comfort, we are of the opinion that the life tenant was under a duty to preserve the income for her own use and not give it away with the result that the corpus of the trust property would be invaded for her care. To the extent that the court's order authorizes or allows the disposal of income by gift or for less than a full and adequate consideration, subsequent to April 2, 1982, we reverse the trial court. We affirm otherwise.

We have considered all of the arguments and issues raised by the parties and conclude that the foregoing disposes of the issues. We also point out that this decision is based upon the unusual facts of this case and the documents controlling the issues herein.

The judgment of the trial court is reversed in part and affirmed in part in accordance with the views expressed herein.